No. 2338

Second Circuit Appeal

## WILLIAM M. McMULLEN v. LOUISIANA CENTRAL LUMBER COMPANY

(June 6, 1925, Opinion and Decree.)
(July 11, 1925, Rehearing Refused.)

(*Syllabus by the Editor.*).

1. **Louisiana Digest—Master and Servant —Par. 159 (a), 160 (j).**

Where the evidence shows that the injured employee, suing under Workman's Compensation Act, is able to do work to some extent, and hence that his injury has produced partial disability to do work of any reasonable character, he is entitled to receive sixty per cent of the difference between the wages he was receiving at the time he was injured and the wages he is able to earn at this time. Under Section 8, Paragraph 1 (c) of Act 20 of 1914.

(The recent amendment to Section 8 of Act 20 of 1914 is Act 216 of 1924. Editor's note.)

2. **Louisiana Digest—Master and Servant —Par. 160 (j), 160 (l).**

Where the lower court in deciding a workman's compensation case, Act 20 of 1914 failed to take evidence to show the difference between the amount of wage that plaintiff was receiving at the time of accident and at the time of trial, the case will be remanded to the lower court for the taking of evidence on that point.

ON APPLICATION FOR A REHEARING.

3. **Louisiana Digest—Master and Servant —Par. 154.**

Under the Workman's Compensation Act No. 20 of 1914, Section 2, Subsection 1, and other sections, the term "accident" includes injury from muscular strain or physical over-exertion such as hernia or rupture, or bursting of blood vessels. This is true although the physical condition of the employee is such as to predispose him to the injury. But it has been held there must be a definite particular occurrence to which the injury can be attributed.

**4. Louisiana Digest—Master and Servant —Par. 159.**

Where the injury to injured employee is accelerated by a diseased bodily condition, he may nevertheless, receive compensation under the Workman's Compensation Act No. 20 of 1914.

**5. Louisiana Digest—Master and Servant —Par. 158.**

In order for an injured employee to recover compensation under the Workman's Compensation Act No. 20 of 1914, Section 1, Paragraph 2, it is necessary for him to show that the injury, a hernia in this case, was caused by a strain while he was in the employment of the defendant.

Appeal from the Thirteenth Judicial District Court of Louisiana, Parish of Caldwell, Hon. F. F. Jones, Judge.

This is a suit by an injured employee for the recovery of compensation under the Workman's Compensation Act No. 20 of 1914.

There was judgment for plaintiff and both plaintiff and defendant appealed.

Judgment affirmed but case remanded for the taking of evidence on the question of the amount plaintiff has been able to earn since injury. The case was remanded for a new trial on all points involved reserving the right of the plaintiff to apply for a rehearing.

Huey P. Long, of Shreveport, attorney for plaintiff, appellee.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellant.

REYNOLDS, J. In this case William M. McMullen sues to recover judgment against Louisiana Central Lumber Company for $7,200.00, payable at the rate of $18.00 week for four hundred weeks, for an accidental injury caused plaintiff while he was tightening a bolt with a 16 or 18-inch wrench while standing on the box of the axle of an American Log Loader.

Defendant denies liability on the ground that the injury from inguinal hernia was not caused from an accident which plaintiff suffered while engaged in the discharge of his duties as an employee of defendant.

On these issues the case was tried and there was judgment for plaintiff granting him judgment for $18.00 per week for 300 weeks.

Both plaintiff and defendant appealed.

The first question presented for our determination is whether or not plaintiff received the injury that caused the inguinal hernia while he was engaged in the course of his employment with defendant.

On this point plaintiff testified, pages 2, 3, 6, 13:

"Q. How were you hurt, if at all?
"A. A drum came loose and I was tightening up the studs put down between the timbers, and I gave a pull on the wrench a pain struck me in the side.
"Q. What side?
"A. The right side.
"Q. In what region of the body?
"A. In the lower right side.
"Q. How did it affect you at that time?
"A. It came with a bad pain.
"Q. What did you do then?
"A. Well, I called one of the tongue hookers to come and tighten it up for me."

* * *

"Q. State whether or not you suffered any more pain that time?
"A. Yes, sir. It hurt pretty bad. I worked two days after that and went to bed.
"Q. What physician, if any, did you go to or attend you?
"A. A few days after that I went to Dr. Joyner.
"Q. He is a physician and surgeon for the Louisiana Central Lumber Company?
"A. Yes, sir.
"Q. Did he tell you what was the matter with you?
"A. He told me that I was ruptured, and told me to go and see Dr. Gardner, so I went to see Dr. Gardner and he told me that all I needed was a truss.
"Q. What did he call it, rupture, hernia or what?

"A. He didn't say, he called me in the back room and wanted to fix me a truss but he did not have one and said for me to come back as it would be two or three days before he could get one."

* * *

"Q. What injury, if any, or ailment did you have about this right side of yours before the accident happened?

"A. None.

"Q. What, if anything, had been the matter with you in a serious way before this time?

"A. There had been nothing the matter with me.

"Q. Had you experienced this same kind of pain before this accident happened to you, when you say you pulled on this wrench?

"A. No, sir." * * *

"Q. What were you doing when you received the injury—what particular thing?

"A. I was tightening up some studs on the drum bolts.

"Q. What position did you have to get in to to that?

"A. I was standing on the box of the axles.

"Q. Did you stand erect or standing in a stooping position?

"A. The way a man has to stand when he has no room to do anything."

Claude McMullen testified, pages 14, 15, 16:

"Q. State just what he was doing at the time?

"A. He was tightening up the box on the drum."

* * *

"Q. What was he standing on?

"A. He was standing on the axle of the loader or box."

* * *

"Q. What happened—what unusual thing happened then?

"A. He hollered and said he couldn't tighten up this box and so I called a negro to go and tighten it up for him.

"Q. Did he complain of any pain after that?

"A. Yes, sir."

From this evidence we must conclude that plaintiff is able to do work to some extent, and hence that his injury has

produced partial disability to do work of any reasonable character and he is entitled to receive sixty per cent of the difference between the wages he was receiving at the time he was injured and the wages he is able to earn at this time.

The evidence failing to establish what this difference is, this case must be remanded to the lower court for the determination of this question only.

For these reasons it is ordered adjudged and decreed that the judgment of the lower court, insofar as it holds that plaintiff is entitled to recover judgment in some amount, be and the same is hereby affirmed, and the case is remanded to the lower court for the taking of evidence on the question of the amount plaintiff has been able to earn since the injury or is able to earn at this time.

## ON APPLICATION FOR REHEARING.

Defendant's counsel, in a very able brief, call attention to the fact that plaintiff did not testify that in pulling the wrench he strained, and also call attention to the definitions of "accident" and "injury,, as contained in the workmen's compensation law, cite the cases of Tackles vs. Bryant & Detwyler, 200 Mich. 350 (167 N. W. 36), Alpert vs. Powers, 223 N. Y. 97 (119 N. E. 229), Cavalier vs: Chevrolet Motor Co., 178 N. Y. Supp. 489, and Schneider on Workmen's Compensation, volume 1, page 837, and DaCosta on Modern Surgery, page 973, and argue with great plausibility that as nothing particular happened when plaintiff felt the pain in his side, but was only performing his usual work, he has not proven any compensable injury under the workmen's compensation law.

We think it will be conducive to clarity to consider the question of law and the question of fact.

In "Workmen's Compensation Acts", a Corpus Juris treatise by Donald J. Kiser,

issued by The American Law Book Company and intended as a part of Corpus Juris, we find the following statement of the law on page 68.

"The term 'accident', as employed in the compensation acts, is broad enough to include a injury from muscular strain or physical overexertion, (41) such as hernia or rupture, (42) or bursting of blood vessels, (43). This is true although the physical condition of the employee is such as to predispose him to the injury, (44). But it has been held there must be a definite particular occurrence to which the injury can be attributed, (45)."

Under note 42, relating to hernia or rupture, are cited the following cases.

Bell vs. Haynes-Ionia Co., (Mich.) 158 N. W. 179.

Robbins vs. Original Gas Engine Co., (Mich.) 157 N. W. 437.

Zappala vs. Industrial Ins. Comm., 82 Wash. 314, 144 Pac. 54; L. R. A. 1916 A. 295.

Peccardi vs. Pub. Service Comm., 75 W. Va. 542, 84 S. E. 242; L. R. A. 1916 A. 299.

Fenton vs. Thorley, (1903) A. C. 443, 5 W. O. C. 1.

Brown vs. Kemp, 6 B. W. C. C. 725.

Fulford vs. Northfleet Coal Co., 1 B. W. C. C. 222.

Under notes 41, 43, 44, 45, 46 and 47 are also cited:

"Acceleration of a diseased bodily condition may constitute a personal injury, (46) and an injury may be by accident, although it would not have been sustained by a perfectly healthy individual. (47)."

Under notes 41, 42, 43, 44, 45, 46 and 47 are also cited numerous cases.

We have not had opportunity to examine these cases but we think the principle of law laid down is sound, and, in fact, do not understand defendant's counsel directly to question it.

We have not had opportunity either to examine the cases cited by them except

Alpert vs. Powers, 119 N. E. 229. This case we do not understand as questioning the doctrine. The decision is placed expressly on the ground that as a matter of fact the hernia dealt with was not produced by any strain. In fact the plaintiff admitted that he did not have anything like an accident happen to him, and did not undergo any extra strain and could not account for the occurrence of the rupture. At the time of the injury he was engaged in lifting bundles of paper weighing forty to sixty pounds, putting them on his shoulder and carrying them up two or three steps and had been doing this same thing twenty times a day for several years. He was only twenty-five years old.

We gather from defendant's discussion of the Tackles case that in it, too, the court found no connection between any strain and the injury which developed ten days after lifting the timber, to which lifting he sought to attribute it. If the court found as a matter of fact that there was no strain or that the strain was wholly disconnected from the injury, the decision is in line with the text cited from Corpus Juris; and this is probably the case. If, on the contrary, the court held that though there was a strain and though the strain did produce the injury yet it was not a compensable injury within the meaning of the compensation law, we cannot hold that such is the case within the Louisiana Compensation Law.

We find in "Workmen's Compensation Legislation of the United States and Canada", being Bulletin No. 272, issued by the United States Bureau of Labor Statistics, an interesting discussion of the question of hernia as dealt with under the workmen's compensation acts of various states. It appears there is some conflict between the various courts of the United States on the question but we believe the

text cited above from Corpus Juris represents the majority view.

## II.

Was the hernia in this case produced or accelerated by any strain in pulling on the wrench?

Doctor Cassity testifies:

"Q. I will ask you to please state, if assuming that this party did have a serious strain, or sudden jerk, as he alleges he had, could a sudden jerk with a wrench have caused an inguinal hernia?
"A. Yes, sir.
"Q. I will ask you, assuming that there was a hernia developing already in the process of developing, is it possible or probable or natural for a hernia in the process of developing to be aggravated, by reason of such a sudden jerk or strain?
"A. Yes, sir, that is the very thing that causes hernia to develop."

Doctor Sanderson testifies:

"Q. I will ask you if a hernia that is started or in the process of developing, or not in the process of developing, could be aggravated and brought on by or made acute by a wrench or trauma?
"A. It could.
"Q. Did this man give you a history of his case?
"A. Yes, sir.
"Q. What was that history as reported to you?
"A. He said that while working on a loader or some kind of machine he was handling a very heavy wrench and was sort of stooped in a twisted position and pulled suddenly on the wrench and had severe, acute pains in the right groin."

Doctor Hines testifies:

"Q. Doctor, if this man, assuming that this plaintiff, sixty years of age, was pulling at the end of a sixteen-inch wrench trying to turn a bolt and while so pullling it he experienced a sudden and severe pain in the right inguinal region, such as he had; that he called to some one to come and do the work for him and made some exclamation of pain, isn't it your opinion that is what caused the hernia if in two or three days he had to quit his work and go to a physician for treatment of hernia?
"A. It might be possible. Assuming there

had never been any pain or trouble in that region before that, I would say yes."

Doctor Hines was a witness for defendant and the other two doctors testified for plaintiff. The questions propounded to the three doctors, it will be observed, were not the same but that propounded to Doctor Hines referred solely to pulling without any allusion to jerks.

Plaintiff testifies:

"Q. What, if anything, had been the matter with you, in a serious way, before this time?
"A. There had been nothing the matter with me.
"Q. Had you experienced this same kind of pain before this accident happened to you, when you say you pulled on this wrench?
"A. No, sir."

It is true that plaintiff nowhere states that in the particular pulling in question there was any strain or any greater exertion than had been used before; perhaps, though, from a fair interpretation of his testimony, taken as a whole, a strain might well be inferred. He was screwing up a nut which became loose and we do not doubt that in doing so he could have strained. We do not think the fact that this was one of his regular duties would bar recovery if as a matter of fact the strain did produce the hernia. The strain might have been somewhat harder than usual or even if no harder the hernia might have been in process of developing and might have arrived at a stage where a strain no harder than customary could have produced it.

However, inasmuch as there will have to be another trial in order to ascertain the plaintiff's earning capacity since the injury, we think the purpose of justice will be subserved by reopening the case for all purposes.

Inasmuch, though, as this is a modification of our previous decree, to the prej-

udice somewhat of the plaintiff, the right is reserved to him to ask for a rehearing.

For these reasons it is decreed that the rehearing asked for by defendant be denied but that the new trial to take place in the District Court be of the whole case and not merely on the question of plaintiff's earning capacity.

It is further decreed that the right to apply for a rehearing be granted plaintiff.