### RENFROW v. CADDO PARISH POLICE JURY et al.
#### No. 4703.

Court of Appeal of Louisiana. Second Circuit.

June 4, 1934.

Cook & Cook, of Shreveport, for appellants.

Harry V. Booth, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff, prior to the date he suffered the alleged accident for which he sues for compensation herein, had been in the employ of the police jury of Caddo parish for eight years or more. He performed the duties of blacksmith and woodworker, and in the discharge of his duties frequently lifted and moved heavy objects. He was connected with the highway department of the parish, and performed his duties at its warehouse in the

city of Shreveport. About one year before the alleged accident his condition became, such that he had his family physician examine him physically, and his blood pressure was then found to register 210 systolic. He was advised by this physician to quit the heavy work he was doing for the parish and rest for a while. He acquainted his superintendent with his condition and informed him of the advice he had been given. His services were then badly needed to construct some wooden forms, and he states that the superintendent expressed himself as not being satisfied with the findings and advice of his physician, and suggested that he be re-examined by the jury's physician, which was done. His blood pressure was found then to be around 200, but he was advised that in view of his age, he being then 57 years old, the condition was not dangerous. He returned to work and satisfactorily performed same until May 17, 1932, when the accident befell him, as a result of which, he alleges, the power of vision of his right eye was permanently lost. The last job assigned him for attention was the construction of a heavy truck body. This was practically completed on May 16th. The body was needed for immediate use, and he resumed work on it the morning of May 17th. He found it necessary to remove some timbers on which it rested, and called a negro helper to assist him. He lifted the body, which weighed about 2,000 pounds, while the boy pulled out the timbers. As soon as this was done the boy was called by another employee to do some work on the outside of the warehouse. He did not have opportunity to hear plaintiff complain of his eye hurting him. Plaintiff alleges that while lifting this heavy body a severe pain suddenly developed in his right eye, followed by dimness of vision, and that within an hour and one-half the sight of that organ was entirely gone. He sues his employer and its insurer for compensation for permanent loss of sight of the eye, alleging that he notified his superintendent of the accident the morning of May 19th.

Defendants deny specifically that the loss of sight of or injury to plaintiff's eye was the result of any accident to him while employed by the police jury, but admit that if he is entitled to any compensation at all, that he has sued for the proper amount, to wit, $20 per week for a period not in excess of 100 weeks.

Defendants prosecute this appeal from a judgment in favor of plaintiff.

The sole issue in the case when suit was filed was whether plaintiff experienced an accident, while in the performance of the duties of his employment, in the purview of the Workmen's Compensation Law (Act No. 20 of 1914 as amended) as interpreted and construed by the courts. Plaintiff died before the expiration of the 100 weeks for which compensation was decreed to him. His death created another issue which we shall discuss later in this opinion.

■ We take it that under the jurisprudence of the state, when this case arose, there could be no serious dispute of plaintiff's right to recover if the accident of which he complains was superinduced by a strain or extra exertion unusual to the routine of his employment, a physical effort which was not the rule, but the exception to the performance of his regular daily duties; and this, too, even though it should appear that the ruptured blood vessels, due to progressive ravages of disease, were not as resistant to the normal demands upon them as they would have been had they been free of disease. It is now well settled by repeated decisions of the Courts of Appeal and of the Supreme Court that strains of this and similar character are accidents within the meaning of the Workmen's Compensation Law, and injuries resulting therefrom are compensable. McMullen v. Louisiana Cent. Lumber Co., 2 La. App. 773; Id., 3 La. App. 562; Becton v. Deas Paving Co., 3 La. App. 683; Patrick v. Grayson & Yeary, 13 La. App. 228, 127 So. 116; Anderson v. La. Oil Refining Corporation, 16 La. App. 294, 134 So. 343; Womack v. Highway Const. Co., 18 La. App. 111, 137 So. 210.

■ The very recent decision of the Supreme Court in Jackson v. Travelers Insurance Co., — So. —,[1] decided on May 21st, extends the liberal construction uniformly given the Workmen's Compensation Law to a degree beyond that theretofore adopted. The facts of that case are analogous to those of the case at bar, and the court's holding therein is decisive of the present case, as we shall endeavor to demonstrate hereinafter.

The material phases of plaintiff's version of the facts attending the injury of his eye are not positively contradicted by any testimony offered by defendants. His version of these facts in some material respects varies from his own allegations, but no objection was made thereto for this reason. He states that the pain in the eye that immediately followed the lifting of the truck body was accompanied by a burning sensation; that this was

---

[1] Rehearing pending at date of publication.

followed by dimness of vision, which, after the lapse of an hour and a half, cleared up, allowing him to do light work the remainder of the day. At the noon hour he imparted this experience to his wife and daughter, and was urged by them not to return to work that afternoon. His eyes then were running water. On his return to the warehouse, he states he informed three of the employees of his eye trouble and, while two of them do not recall him doing so, one does admit that he remembers the fact and adds that he closely examined the eye to see if there was not some foreign matter in it, but found none.

Plaintiff returned to his work on May 18th. His eye did not seriously bother him that day, and he performed his usual duties. The following morning, on awakening, he discovered that the sight of the eye was entirely gone. He then called his superintendent to his home and was advised by him to again consult the same physician who had, about one year prior, advised him that his high blood pressure condition would not be aggravated by resuming hard work. He was sent by this doctor to the office of Dr. Woolworth, an eye specialist in the city of Shreveport, but who was then absent from the city. His associate, Dr. Noel T. Simmons, made a close examination of the eye and his evidence, taken under commission, is in the record. He testified for defendants. He found that plaintiff was suffering from arteriosclerosis (hardening of the arteries) and high blood pressure; that some of the blood vessels of the eye had ruptured, causing hemorrhage and loss of vision of that member. With some qualification, he was of the opinion that the injury was rather due to his general condition than to the heavy work and straining. Other doctors were of an opposite opinion as to the immediate cause of the rupture of the arteries. Dr. Simmons' testimony is unusually enlightening on the causes, effects, and history of ailments of the kind with which plaintiff was afflicted. We quote therefrom at length because we believe, in the final analysis, it supports plaintiff's theory of the cause of loss of the eyesight. He says:

"As arteriosclerosis develops the walls of the arteries gradually lose their elasticity due to the muscular element of the walls of the vessels being gradually replaced by connective tissue which in time calcifies; so that finally the wall of the artery is inelastic and difficult to compress, being referred to as a 'pipe stem' artery. Such a blood vessel is not as strong as a normal elastic vessel. When the heart beats the blood is forced into the arteries with rapid increase in pressure. A normal elastic artery stretches with each such rise in pressure. As arteriosclerosis progresses, the arteries lose their elasticity and strength and at the same time resistance to flow of blood through the capillaries increases, causing a compensatory rise in arterial blood pressure to force the blood through the capillaries. A vicious circle is thus established, the arteriosclerosis increases capillary resistance to the blood, which causes a rise in arterial blood pressure, which overworks the heart and arteries and aggravates the arteriosclerosis; thus the blood pressure continues to rise and the strength of the arteries decreases. If the heart holds up under the strain, eventually the arterial pressure becomes too great for the weakened arteries to stand, when a 'blow out' occurs at the weakest spot. This weakest spot is usually in the retinal arteries of the eyes, or in the arteries of the brain. This is because the brain and contents of the eyes are soft, giving no outside support to the arteries. When it occurs in the brain, it is called apoplexy, or a stroke of paralysis; in the eye it is a retinal hemorrhage of varying size, depending on the size of the ruptured vessel. Also in every body the arterial blood pressure rises sharply with physical exertion, frequently precipitating apoplexy, cases of which are familiar to most laymen.

"There were numerous small retinal hemorrhages in both of the patient's eyes, with larger hemorrhages in the right eye, there being extensive hemorrhages along the superior temporal vessels.

"My opinion, therefore, is, that the original diminution of vision occurring two days before I examined plaintiff was due to rupture of a blood vessel supplying the eye with resultant hemorrhage, and caused by his arteriosclerosis and hyper-tension. *This hemorrhage or leakage could have progressively increased from day to day without any physical exertion by the patient. However, in view of his history of heavy work the next day and the fact that physical exertion raises the blood pressure, it is readily seen that such elevation of blood pressure could have increased the hemorrhage or leakage. Whether or not useful vision was already destroyed by the initial lesion, or would have been destroyed by the initial lesion within a few hours time, is obviously impossible to state.*" (Italics ours.)

Elsewhere in his testimony Dr. Simmons says that, in view of the history of the case, as related by plaintiff, "It is quite reasonable

to assume that there was direct causal relationship between lifting and straining, pain in the eye, and immediate loss of sight."

The other physicians who testified in the case agree with these conclusions of Dr. Simmons. All of them say that heavy work by one affected with high blood pressure is conducive to aggravation of the condition, and that if plaintiff suffered a hemorrhage on May 17th and performed heavy work the following day, 'that the expected effect of this work would be to have increased the hemorrhage or leakage, with the ultimate effect of loss of vision to the eye.

Based upon the evidence in the case, lay and medical, our conclusions are that plaintiff was afflicted with blood pressure of a dangerous type and hardening of the arteries, both of which were of long standing; that these two diseases were of a progressive character and were aggravated by the nature and character of the heavy work he was doing for the police jury; that on May 17th, while in the discharge of his duties, and whether as a result of any extra physical exertion or strain or not is immaterial to the case, blood vessels of the eye gave way; the ultimate result being loss of sight of that eye.

Our understanding of the Jackson Case, referred to above, is that it holds that where a laborer's vitality and powers of physical resistance have been reduced by ravages of disease, progressively sapping vitality over a long period, while he is employed, and that without performing any duty requiring effort beyond the regular routine of his work, and without any strain in excess of that which he is continuously subjected to, a diseased organ gives way from which death results, that such death is caused from an accident arising out of employment within the meaning of the Workmen's Compensation Law. In that case the court, in passing, said: "It appears, therefore, that the fair preponderance of the medical testimony is to the effect that the accident caused by the heavy work hastened the death of the deceased, and that the strain he underwent, due to his weakened physical condition, was the cause of the hemorrhage of the stomach that resulted fatally."

The present case falls squarely within this holding.

We therefore think the award of compensation to plaintiff correct.

 Plaintiff died on November 15, 1933, when only something over 77 payments of compensation under the judgment appealed from had accrued. His widow and heirs have made themselves parties to the suit, and were substituted as plaintiffs. Defendants contend that these substituted plaintiffs are not entitled to recover any amount beyond that which had accrued to deceased at time of his death.

The Workmen's Compensation Law (subdivision 9, par. (d) of subsection 1 of section 8 [Act No. 20 of 1914, § 8, subsec. 1 (d) (9), as amended by Act No. 242 of 1928, p. 357]), provides that: "In the following cases the compensation shall be as follows: * * * For the loss of an eye, sixty-five per centum of wages during one hundred weeks."

The widow and heirs of plaintiff contend that as the judgment herein is not unconditional and not indeterminate that it, in its entirety, descended upon them, when plaintiff died, in the same manner that a judgment secured under article 2315 of the Civil Code would have been transmitted. We do not agree with this contention in view of the facts of this case. It is not shown that deceased left dependents, and it is not argued that his widow and heirs claim the unaccrued part of the judgment because of dependence. While it is true this judgment is more nearly unconditional than one rendered for compensation during period of disability, yet it would have abated had deceased's eyesight been fully restored before he had been paid the full amount thereof. Contradistinguished from judgments rendered in tort actions (under article 2315 of the Civil Code), a judgment for compensation has not for its basis necessarily any negligence, fault, or wrong committed by the employer towards or against the employee. It is an award, personal in its nature to the employee, to compensate him measurably for the loss of, or diminution in, his earning power while rendering service to his master. If no dependents survive the beneficiary the judgment terminates on his death, and to that extent at least it is a conditional decree. If a dependent widow survives, and she is not barred for legal cause, she is entitled to only 32½ per cent. of the weekly wages of the deceased husband; if a widow and one child survive, both dependent, together they are entitled to 46¼ per cent. of the weekly wage, etc. Therefore, it is obvious that the judgment in this case could not have been transmitted in its entirety to dependents of deceased, if there had been such; a fortiori, it was not inherited by his widow and heirs who are not shown to be dependents, nor who assert the right to demand and receive payment of unaccrued payments of compensation because of dependence.

The award of compensation to deceased did not have the effect of being a vested and unchangeable interest in him, for the reasons herein assigned, and for the additional reason that it was not assignable nor subject to seizure and sale, in whole or part, for debt.

It is conceded by counsel of both sides that there is no precedent of the question in the jurisprudence of the state. The question has been frequently passed on in other jurisdictions and, with some exceptions, the courts hold, as we do herein, that such a judgment abates on the death of the employee; the widow and heirs as such being entitled to recover only that part of same which has accrued to the date of his death. The subject is exhaustively covered by collection of annotations in 15 A. L. R. 821; 24 A. L. R. 441; 29 A. L. R. 1426; 51 A. L. R. 1446. See, also, Tierney v. Tierney & Co., 176 Minn. 464, 223 N. W. 773; Wozneak v. Buffalo Gas Co., 175 App. Div. 268, 161 N. Y. S. 675.

We adopt the following reasoning in 28 R. C. L. p. 782, which primarily refers to the heritable character of a compensation decree in favor of deceased dependents, as correctly reflecting the philosophy of the Workmen's Compensation Law on this subject and as indicating an equitable rule to be applied thereto: "In some jurisdictions it has been concluded that upon the death of the dependent all obligation of the employer or insurer to pay future installments of compensation awarded to the dependent ceases, and the personal representative of the dependent has no right to any unpaid, undue installments of the compensation awarded to the dependent. To hold that the dependent's right to compensation is a vested right, which passes to a legatee by will, and in case of intestacy goes to the dependent's next of kin, would be, according to the reasoning of these courts, to put upon the insurer a burden not called for by the object which the act was passed to attain. In addition, the compensation awarded the dependent would go, in that case, to persons altogether outside the class contemplated by the act. So construed, the act would or might enrich strangers, in place of doing justice to the family and next of kin of an employee killed in the course of, and so as an incident to, the business in which he was employed."

For the reasons herein assigned, the judgment appealed from is reduced to $1,554.28 (77⅝ weeks at $20 per week), on which amount interest is due and collectible at the rate of 5 per cent. per annum from November 15, 1933, date of death of plaintiff herein, until the full amount has been paid; and like interest is due and collectible on the weekly payments of $20 of said amount, beginning May 19, 1932, and ending November 15, 1933, as fixed and decreed in the judgment appealed from; and, as amended, said judgment is affirmed.

MILLS, J., recused.