BIGGS v. LIBBEY–OWENS–FORD GLASS CO., Inc., et al.*

No. 5379.

Court of Appeal of Louisiana. Second Circuit.

Oct. 30, 1936.

T. Overton Brooks, of Shreveport, for appellant.

Jackson & Smith and Chas. L. Mayer, all of Shreveport, for appellees.

TALIAFERRO, Judge.

Plaintiff brings this suit against his employer and its insurer to recover com-

*Rehearing denied Dec. 11, 1936.

pensation for alleged permanent total disability, averring, of course, that such disability is the consequence of an accident received by him while performing services arising out of his employment in the course of his employer's hazardous business. The specific cause of the disability is a left inguinal hernia. Defendants deny that this hernia is the result of or was caused by an accident occurring while plaintiff was performing services under his employment with the glass company.

From a judgment rejecting his demands, plaintiff appealed.

There is really but one issue in the case, and that is whether plaintiff experienced an accident, causing the hernia, while performing the duties of his employment. Total disability to perform the only sort of work of which he is capable, viz., manual labor, is not seriously questioned.

Plaintiff applied to defendant for work in January, 1934. He was referred to its regular physician for a physical examination. It was learned therefrom that he had inguinal hernia on both sides. He was advised to submit to an operation, and did so promptly at the Charity Hospital in the city of Shreveport. Very soon thereafter his condition was such that he was given work by the glass company. He was "let out" in April, 1934, but re-entered defendant's employ in September following, after submitting to another physical examination by its regularly employed doctor. He was found to be sound and was assigned to the position of "dipper," the duties of which required him to stand at the far end of a leer and lift pieces of glass therefrom as they came to him on live rollers to a buggy on which they were carried to another room of the factory. His work hours were from 6 p. m. to 12 p. m. His contention is that at about 11 o'clock p. m., November 2, 1934, while lifting a piece of glass from the leer to the buggy, the hernia developed to the condition found on November 5th. If the proof sustains this contention, the injury is compensable under Jackson v. Travelers' Insurance Company, 180 La. 43, 156 So. 169, and Renfrow v. Caddo Parish Police Jury (La. App.) 155 So. 291, 294. He concluded the day's work, left the factory, and repaired to his home without informing his superiors or confiding to his fellow workmen that an untoward accident had befallen him. He did complain to his wife,

a few minutes after quitting work, that his left side was paining him. His silence in the respects mentioned is seriously urged by defendants to discredit his subsequent contention that at the said hour he felt something give way in the region of his anatomy where hernias have their incipiency and develop. We do not think plaintiff's conduct in this respect should be weighed against him to the extent urged by defendants. In the light of all the testimony, the circumstances, and his explanation of his action, we do not think it should have a decisive influence in the case. He did not think the injury so serious that it would prevent him from returning to work next day, but in this he was in error. He reported for work the evening of November 4th and then informed his foreman that he was sore on his left side, about the spot where the previous hernia operation had been performed. The foreman says he offered this as an explanation of his absence from duty the night before.

Plaintiff was again directed to the employer's own physician for examination, which was done the following day. He was found then to be suffering from an incomplete recurrent left inguinal hernia, and was advised that an operation only would give relief. He was also told by the doctor that he might engage in light work. As a witness, this physician stated that even this sort of work would likely aggravate the trouble, ultimately causing much more serious complications to arise. The work plaintiff was performing on November 2d is characterized by this doctor as being "heavy work," such as he should not now do; and that such work, viz., reaching across the leer and lifting large pieces of glass therefrom, weighing 36 pounds and more, and depositing them carefully on the buggy, required sufficient physical effort to produce the hernia. He also testified that hernia could be in process of development over a period prior to actual rupture.

Plaintiff explains that he did not inform any one of his experience the night of November 2d because, first, that he did not think his condition serious, and, second, that he was afraid, if he did let it be known to his superiors, he would be relieved of his job, and that employment was difficult, in fact nearly impossible, to secure at that time. He did endeavor to get an extra man to work in his stead the night of November 3d.

Defendants argue that the true reason plaintiff did not return for work on November 3d was because he had imbibed too freely that day. While there is some testimony to support this contention, it is far from conclusive of the question. The inescapable fact is that plaintiff, on November 5th, had hernia so far developed that it would unquestionably prevent him from performing the work he was performing on November 2d. All the doctors agree in this conclusion. Therefore it follows that this hernia, or rupture superinducing same, came into existence at the time plaintiff says it did or between that time and November 5th, when he was last examined by defendant's doctor. The record is barren of any direct testimony tending to prove that it occurred during the latter period, and we feel certain that it did not then happen. Therefore does not plaintiff's contention as to the time it occurred stand materially unaffected by the inconclusive circumstantial evidence offered against it? We think it does. He was pronounced physically sound by the glass company's physician on September 3d. He worked continuously for the company until November 2d and quit work under the circumstances hereinbefore related. He was found afflicted with the hernia on November 5th. The difference in his condition certainly arose while he was performing the services of his employment. Plaintiff's right to recover is secured to him, even though his disability was not immediately caused by an unusual strain or physical effort, or some awkward movement of his body. It is sufficient for recovery that the affected parts of his body gave way while at work for defendant.

We largely predicated our opinion in the Renfrow Case upon the court's holding in the Jackson Case, and therein said: "Our understanding of the Jackson Case, referred to above, is that it holds that where a laborer's vitality and powers of physical resistance have been reduced by ravages of disease, progressively sapping vitality over a long period, while he is employed, and that without performing any duty requiring effort beyond the regular routine of his work, and without any strain in excess of that which he is continuously subjected to, a diseased organ gives way from which death results, that such death is caused from an accident arising out of employment within the meaning of the Workmen's Compensation Law. In that case the court, in passing, said: 'It appears, therefore, that the fair preponderance of the medical testimony is to the effect that the accident caused by the heavy work hastened the death of the deceased, and that the strain he underwent, due to his weakened physical condition, was the cause of the hemorrhage of the stomach that resulted fatally.' "

The facts of the present case bring it squarely within the doctrine above quoted. It is evident to us, at least reasonable to infer, which finds support in the medical testimony, that plaintiff, after the double hernia operation, was more susceptible to that trouble than previously, and that by constant, daily manual labor, requiring bending of the body and lifting weighty objects, the power of resistance of those organs of his body ordinarily involved in hernia was gradually though surely reduced, the ultimate result being the rupture incapacitating him for work. We think plaintiff has established his contentions by a fair preponderance of the testimony, and therefore entitled to compensation during the period of disability. An operation will most probably bring partial, if not total, relief from present disability.

Plaintiff was earning $2.70 per day and working six days each week, when injured. In addition to this amount, he was receiving a weekly bonus, averaging $2. His weekly income was therefore $20.90. He is entitled to judgment for 65 per cent. of this amount as weekly compensation, or $13.58. There is no proof that he has incurred or paid for any medical and surgical services.

For the reasons herein assigned, the judgment appealed from is annulled, avoided, and reversed; and there is now judgment for plaintiff, James T. Biggs, and against defendants, Libbey-Owens-Ford Glass Company, Incorporated, and Liberty Mutual Insurance Company of Boston, Mass., in solido, for compensation at the rate of $13.58 per week during the period of plaintiff's total disability, however not exceeding 400 weeks; with legal interest thereon from due date of each payment, the first one of which being hereby decreed to have been due on November 9, 1934; and for all costs of suit.