### RHODES v. HILLYER–DEUTSCH–EDWARDS, Inc.

### No. 5726.

Court of Appeal of Louisiana. Second Circuit.

Nov. 4, 1938.

Writ of Certiorari and Review Denied Jan. 10, 1939.

Wood & Wood, of Leesville, for appellant.

Cline, Thompson, Lawes & Cavanaugh, of Lake Charles, for appellee.

HAMITER, Judge.

The material allegations of plaintiff's petition in this cause are, in substance, that on November 18, 1937, he was in the employ of defendant's logging and lumber department in Sabine Parish, Louisiana, and while engaged in performing services incidental to his employment he received an accidental injury which resulted in a hernia; that on account of such injury he has been rendered permanently and totally disabled to do work of any reasonable character; and that his daily wage at the time of the accident was $2.50.

He asks judgment against defendant awarding compensation, under the Louisiana Employers' Liability Act, Act No. 20 of 1914, of sixty-five per cent of his wages during the period of disability, not exceeding 400 weeks, together with interest and costs.

Defendant admits the employment and daily wage as alleged. It defends on the ground that, (1) plaintiff is suffering from no hernia, and (2) in the alternative, if he has a hernia it was not acquired by plaintiff while in defendant's employ or as a result of any accident occurring during said employment.

The trial judge rejected plaintiff's demands, after a trial of the merits of the case, and this appeal was requested and granted.

The first above stated defense is, we think, without merit. The evidence overwhelmingly preponderates in favor of the fact that following the claimed occurrence of the accident plaintiff was suffering with a hernia on his right side. Three of the medical experts testifying in the

case were of the opinion that it existed. One of these appeared in defendant's behalf. It was described as of the indirect inguinal kind. Also, the evidence is conclusive that the affliction has produced a total disability to do the work to which plaintiff is fitted and accustomed.

The remaining defense furnishes a more difficult problem for solution. The question presented thereby is: Did the hernia result because of an accident occurring during and in the course of plaintiff's employment with defendant?

It is undisputed that plaintiff worked for almost two years for a Mr. Robert Geohagan, who was engaged in the general logging business, during or about 1929 and 1930. Thereafter he was employed by the Weber-King Manufacturing Company at Leesville, Louisiana, for approximately one and one-half months. Later, the Crowell & Spencer Lumber Company had him on its payroll during a three or four months period. In the fall of 1937 he was successful in securing employment with defendant; however, before beginning his duties, he was required to and did undergo an examination to determine whether or not he was physically able to work. Dr. M. S. Stephens performed this for defendant and pronounced him physically fit. A search for hernia was made at the time but none was found. For approximately two months thereafter, or until November 18, 1937, plaintiff worked for defendant near Gandy, in Sabine Parish, Louisiana. His work classification was and has always been that of a manual laborer.

On the morning of November 18, 1937, plaintiff and other employees of defendant, including its foreman, were in the woods for the purpose of carrying on logging operations. A short time after they began, plaintiff approached the foreman, stated that he had hurt his side and asked to be taken to a doctor. Thereupon the two entered the foreman's automobile and went to the office of Dr. Stephens at Hornbeck, Louisiana, the same physician who had previously examined him for defendant's account. This medical practitioner states: "When he first came in he complained of his side hurting and of a knot swelling up and said he had hurt himself, and I examined him and did not find evidence of trouble then and thought possibly it was a muscle cramped. I examined him for hernia, but found no evidence of hernia at the time. I told him to go back to work and if it was hernia it would show up. I did not try especially to get a hernia development at the time and knew if he did have it would show up when he went back to work."

The foreman then drove plaintiff back to the woods and work was resumed. After several logs had been handled, claimant called the foreman and informed him that the knot had appeared. The latter examined the body, noticed a bulge on the side, and both men returned to Dr. Stephens' office. Another examination was there made, this being about an hour after the first one, at which time a distinct indirect hernia, caused by trauma, was found. Plaintiff was sent home, and since that time he has performed no manual labor.

During the course of the trial of the case plaintiff was examined by Dr. Stephens and two other physicians. On that occasion no knot or protrusion was noticed. Nevertheless, Dr. Stephens was still of the opinion that a hernia existed and that it was totally disabling.

As to the occurrence of the claimed accident that allegedly produced the hernia, the testimony is conflicting. Plaintiff testifies that the foreman accompanied him to a certain place in the woods and ordered the removal of two tree-tops from the road. The foreman left shortly after he commenced the execution of the assigned task. In the performance of this work, he states that, "I was driving a pair of young mules and they were hard to handle, and I drug the second tree top and went to turn the mules back and they were about to get me in a jam, and I stepped on a limb or something and my foot slipped from under me, and the stretchers and lines kept me from falling completely down, and I just fell in a spraddled position and when I did my side had a stinging and burning feeling and it made me sick at my stomach."

He further states that he stopped there three or four minutes and then walked to some company trucks, driving his team as he went, which were about 300 yards away; that at this latter place he began loading logs onto the trucks and informed three co-employees, not including the foreman who was absent, of his having hurt his side while moving the tree-tops; that after handling about five logs he ceased work and walked to a fire, where he was

standing when the foreman returned and was first told of the accident and injury.

The above mentioned co-employees corroborate plaintiff's testimony to the effect that he remarked about hurting his side in moving the tree-tops and that the foreman was absent when such remarks were made.

It is the testimony of the foreman that he was with plaintiff during the entire time the tree-tops were being moved; that he observed no accident and no complaint of injury was then made; that after the completion of that work claimant went to the trucks to load them while he, the foreman, drove to Anacoco, Louisiana, for the purpose of obtaining an extra truck casing; and that when he returned plaintiff came to his car, stated that he had hurt his side, and asked that he be taken to the doctor.

▆ After considering all of the evidence in the case, we are convinced that plaintiff's present condition was brought about by an accident arising by reason of the performance of his duties with defendant. We are not unmindful of the foreman's testimony that he saw no accident take place; however, the fact remains that a distinct and totally disabling hernia appeared on the morning in question, and has endured since then. If it had been in existence for several years prior to the morning in question, as defendant contends, plaintiff could not have undergone the strenuous work of logging which he performed during that period for defendant and the other above named employers. "It is a matter of which we may take cognizance that the work of a laborer, in cutting logs in the woods, requires strength, endurance, and good physical state of health." McPherson v. Hillyer-Deutsch-Edwards, Inc., La.App., 143 So. 89, 90.

It was appropriately said, we think, by the First Circuit, Court of Appeal, in Dixon v. Eula Lumber Co., 6 La.App. 206, that: "Now, if plaintiff had a hernia of the size described by all the physicians, at the time he came on defendant's works, he could hardly have performed the work he was employed to do for four or five years without a truss. If he had been wearing a truss for such a length of time the truss could hardly have escaped the notice of his fellow employees in their sleeping quarters; while if he had not worn a truss his condition would have been a matter of such general observation and knowledge on the work that it would have been proved on the trial."

There is no evidence in the instant case tending to show that plaintiff has ever worn a truss.

Our attention is directed to the testimony of one of the physicians appearing as a witness for the defense to the effect that five, six or seven years previous to the date of trial plaintiff came to him and complained that "he strained himself or got hurt while working for Mr. Geohagan"; that an examination was then made and there was noticed a slight bulging in the right side in the inguinal canal; and that "the best I remember" there was no difference between the condition then and on the date of trial. No written record of the mentioned visit and examination was kept by the physician, however, and he testified regarding them solely from memory. Plaintiff admits that he went to this physician and states that, "I went to Doctor Phares in thirty, I had trouble with my right testicle, and I went to Doctor Phares and he said I had a bad sprain on the right side and if I didn't quit hard work that I would have a hernia some day."

He denied, however, that he was suffering from a hernia at that time. Immediately thereafter, he entered the United States Veterans' Hospital at Alexandria, Louisiana, because he was in a run-down condition, where he stayed a month. No operation for hernia, or for anything else, was there performed on him.

Even if the facts recited by the physician concerning the examination made years ago be accepted as true, we think that the performance by plaintiff of his above mentioned subsequent logging activities conclusively discloses that he had then regained and was enjoying normal physical fitness. And this conclusion is strengthened when it is considered that plaintiff was examined for hernia before the commencement of his work with defendant, and at the latter's request, and none was found.

▆ Then, too, if it be assumed that the muscles of claimant's abdominal walls were still somewhat weak, on account of the earlier ailment, when he started this last mentioned employment, and his injury resulted by reason of an aggravation of this weakness by his daily manual labor while with defendant, his incapacity

would be compensable under the Louisiana Employers' Liability Act as interpreted by our jurisprudence. Jackson v. Travelers' Ins. Co., 180 La. 43, 156 So. 169; Renfrow v. Caddo Parish Police Jury, La.App., 155 So. 291; Biggs v. Libby-Owens-Ford Glass Co., La.App., 170 So. 273.

It is our opinion that the trial judge manifestly erred in refusing to award compensation in this case, and that there should be judgment for plaintiff as he prays.

Accordingly, the judgment of the district court is reversed and set aside, and there is now judgment in favor of plaintiff, Arthur Rhodes, and against defendant, Hillyer-Deutsch-Edwards, Inc., for compensation at the rate of $9.75 per week during the period of plaintiff's total disability, not, however, exceeding 400 weeks, with legal interest thereon from the due date of each payment, the first one of which was due on November 25, 1937. It is further ordered that defendant pay all costs of the proceeding.