JANVIER, Judge.
This compensation suit is based on the allegation of William Warning that,. on September 12th, 1952, while ah employee of Jahncke Service, Inc., and engaged in hazardous employment he, as a result of accident, sustained physical injuries which caused permanent; ■ total disability. He alleges also that “in about the year 1936” he had sustained a severe back injury, and that, though he had been able 'to resume work about two months after the occurrence of the accident in 1936, “he has suffered painful recurrent injuries * * * which on occasions caused him to become confined.” He further alleges that, though as a result of the accident in September, 1952, he was permanently and totally disabled, the employer and the insurance carrier of the employer refused to pay him compensation after October 10th, 1952.
After being discharged by the physician as able to return to work on October 10th, 1952, Warning brought this suit against his said employer, Jahncke Service, Inc., and its insurance carrier, Royal Indemnity Company, averring that he had been permanently and totally disabled and praying for judgment against both corporations solidarily in the sum of $30 per week for four hundred weeks, subject to a credit for such amounts as had already been paid. He also sought reimbursement for medical and incidental expenses in the sum of $500 and for a reasonable attorney’s fee.
Defendants interposed pleas of prescription of one and two years to any ■ claim which might have resulted from an accident in 1936, and denied that on September 12, 1952, there had occurred any accident, or that plaintiff had sustained any accidental injury, and they, averred that if he did sustain any such injury on that date, he had entirely recovered and could have returned to work on October 10th, 1952, to which time compensation had been paid to him.
In the Civil District Court for the Parish of Orleans there was judgment in favor of plaintiff and against both defendants solidarily in the sum of $30 per week from the 15th day of September, 1952 to December 15th, 1952, subject to a credit for compensation .payments made to October 10th, 1952, and there was further judgment in favor of plaintiff for $77.51 representing medical expenses paid by him. From this judgment, on July 14th, 1953, Warning appealed. Defendants answered the appeal, praying that the judgment be reversed and that any recovery be denied plaintiff.
Warning died on July 25th, 1953, and on March 31st, 1954, while the matter was pending here, his widow filed a motion in which she suggested that, as the legal representative of Warning, she be made a party appellant. To- this motion she attached a copy of the judgment of the Civil District Court for the Parish of Orleans *244 rendered in the succession proceedings of William Warning and under which judgment she, the widow, was. recognized as ‘‘the sole surviving spouse in community of the deceased, entitled as such to the ownership of all of the property left by the deceased. * *
When the matter was heard by us, the defendants-appellees made two contentions: first, that the record does not. justify a holding that Warning sustained any accidental injiiry on September 12th, 1952, or that, as a result of what occurred on that day, any disability from which he may have suffered was lighted up or accelerated, or resulted in any further disability; and second, defendants maintain that even if any accidental injury is shown with any. resulting disability, the right of the present plaintiff, Mrs. Warning, is limited to such recovery as Warning was entitled to at the time of his death.
The record is voluminous and is composed largely of technical medical evidence. There is much reason to doubt whether, on September 12th, 1952, anything occurred which in any way affected the physical' condition of Warning. He charged that on that day,’as he was operating a crane of the Jahncke Company, a defective lever became disengaged. and he was thrown to the floor of the crane and that his back was injured and that he reported the accident.
The evidence is conflicting as to whether he made any such report at the time alleged, although it seems evident that there was some defect in the crane which caused it to operate improperly.
The record shows that in 1936 Warning had sustained an injury to his back and that, as a result, near the lower extremity of his spinal column there were structural changes which appeared in several of the X-ray photographs which were taken after thé alleged occurrences in 1952.
The various histories of the occurrence of the accident in 1952 — if there was such an accident — as given by Warning to the defendants’ doctors show that, in all probability,'he hiniSelf was not at all certain as to how his alleged injuries were sustained. It seems also that, before the occurrence of the alleged accident, Warning was suffering either from a defective condition of his back or from some other cause.
The examinations made by Dr. Joseph T. Scott, Jr., Dr. Howard Carr and Dr. Lee C. Sehlesinger, all employed by defendants, showed no disability which could be traced to the accident of 195.2. Dr. Scott treated him for about ten days, but he says that during that period he found no objective symptoms of any injuries which could have resulted from the accident of 1952, but that he treated him because he continued to complain of pain. The same may be said of the findings of the other doctors produced by the defendants. They all found evidence of a back condition which could have been caused by trauma but all felt certain that the condition which was found could not have developed as a result of an accident in September, 1952.
Dr. Scott, referring to the “lipping” of two of the lumbar vertebrae said:
“ * * * that, of course, is something that comes over many years.”
When asked whether it could have resulted from an accident which occurred in September, 1952, he answered, “No, sir.”
Dr. Howard Carr said:
“ * * * The physical examination of the patient disclosed no disability from the episode as having occurred September 15, 1952.”
Dr. Charles Lilly, one of the doctors produced on behalf of plaintiff, when asked whether it takes a period of time for the development of hypotrophic arthritis answered, “That’s right, yes sir.” And when asked whether it could develop in a month or a week, he answered, “No, no.”
Dr. Lee C. Sehlesinger said:
“I stated in my report that although the patient’s complaint was considerable in relation to his back, orthopedic examinátion is objectively negative and *245 I do not believe that this patifent has permanent disability of his back from trauma sustained 12 September 1952 and therefore I gave him orthopedic clearance.”
And in a report of an examination which he had made Dri Schlesinger, after stating what he found, said:
“It is therefore obvious from radiological studies, that changes in the patient’s lumbar spine of hypertrophic arthritic origin preceded the date of the patient’s injury, and were there prior to his injuring his back, and there have been no further advancements of these changes in the intervening period between 16 September 1952 and 2 March, 1953. I must therefore conclude that the patient has suffered no structural damage as a result of the accident to his back on 12 September, 1952.”
Dr. George C. Battalora, employed by Warning, at first thought that he might have been disabled as he claimed, but, after treating him for a time, refused to continue to treat Warning, being of the opinion that though he still complained, there was no reason for his complaints. He discontinued treatment after December 15th, 1952. As a matter of fact, on April 9th, 1953, Dr. Battalora, at the request of Warning, or of his wife, issued a certificate reading as follows:
“To Whom It May Concern:
“Mr. William Warning was last treated by me on December 15, 1952. He now comes in for a certificate that he may return to work.
“He is fit for work.”
As to the testimony of other doctors, we may say that it appears to be quite evident that all that they found was that Warning, at some time in the past, sustained a'back injury, but the record convinces us that the condition which appeared in the various X-ray photographs could not have developed as a result of the accident of September 12th, 1952. As a matter of fact, the record leaves no dóubt in our minds that, at that time, the plaintiff’s condition was entirely thé result' of a disease from which he was suffering. This is made evident by the testimony of most of the doctors, by a hospital report and by - other evidence, which shows that he was suffering -from a contagious lung condition which had become very evident at the time of the trial.
We doubt seriously that Warning suffered any injury as the result, of the accident at the time alleged and yet there is evidence which, if believed, would indicate that there was an accident and that some disability did result.
The insurer paid compensation to October 10th, 1952, and the District Judge, though he entertained some - doubt on the subject, found that there was disability until the employee was discharged by his own expert, Dr. Battalora. This was on December 15th, 1952. In view of this finding, we think that the record does not justify a reversal of the judgment and that Warning, had he not died, would have been entitled to recover as set forth in the judgment of the District Court.
When we come to consider the legal situation which was created when Warning, the original plaintiff, died and his widow, as his legal representative was substituted as party plaintiff and appellant, we immediately note, of course, that under the Compensation Statute, Act No. 20' of 1914, as amended, LSA-R.S. 23:1021 et seq., there are contemplated two entirely separate and distinct categories of claimants— one category includes only the injured employee who, as the result of the accidental injury, may be either permanently or temporarily disabled, and the other includes those dependents such as the widow, the children, etc., who are entitled to compensation only if the employee- dies as a result of the accidental injury.' The two different claims cannot exist at the same time. So long as the employee lives, he is entitled to make claim and no one else has any claim. At his death the claim of his dependents them comes into existence. Since the rights of the employee terminated at his death, it *246 necessarily follows that the compensation to which he might have been entitled is limited to the period during which he lived, and no one, as his heir or as his legal representative, can step into his shoes and make claim for the- weekly compensation payments which had not at that time accrued. This is necessarily so, otherwise the employer or his insurer might be answerable, to the personal representative of the deceased for such -.weekly payments as had not accrued 'and also to the dependent who, as the result of the death of the employee, may make claim as a dependent.
It should be noted that Mrs. Warning did not attempt to substitute herself as a dependent .widow, but that her motion merely states that as. “sole surviving spouse in community” she is entitled as such to- be made a party plaintiff and that the judgment in the succession proceedings recognizes her as entitled to all the property left - by Warning, particularly his right in this litigation.
If it should appear that Warning died within one year- of the occurrence of tlpe accident and that the death resulted from the accident and that the widow is entitled to the rights given to a widow under the compensation statute, then it may be that she has a claim.in her own right,as a dependent ■ widow, but that right should be asserted by her in her own action and is an entirely different right from, that which is asserted here.
That the original claim abates at - the death of the employee has often been held and seems to be well settled in this state. In Guillot v. Weaver Brothers Thompson Lumber Co., 31 So.2d 278, 279, the Court of Appeal for the Second Circuit said
“At plaintiff’s death the benefits accruing to him under -the Workmen’s Compensation Law ceased. These benefits were personal to him as a disabled workman and after -his death payments that had not accrued were not heritable. The interest of his heirs and legal representatives is limited to the amount of payments that had accrued and had not been paid at the time of his death.”
See, also, Warren v, Globe Indemnity Co., 216 La. 107, 43 So.2d 234; Richardson v. American Employers’ Ins. Co., La.App., 31 So.2d 527; Renfrow v. Caddo Parish Police Jury, La.App., 155 So. 291; Hall v. Southern Advance Bag & Paper Co., La.App., 158 So. 829.
The death of Warning, while the matter was pending on appeal in this Court, poses a most interesting- question since counsel for plaintiff argue that it should be determined from the record that the death resulted from the accident and that therefore had Warning -lived he could have received weekly compensation not only up to December 15th, 1952, as awarded in the judgment of the District Court, but up to July 25th, 1953, the date of his death.
If there was disability between the date to whi-ch compensation was awarded, December 15th, 1952, and the date of his death, July 25th, 1953, and that disability resulted from the accident, then, of course, Warning would have been entitled to compensation for an additional period, with the result that his widow, -who is entitled to what, he could have recovered, could now recover for those additional weeks. But even if,, from the record which is before us, we-could hold that the death resulted from the-alleged accident, there is nothing whatever in the record which, in our opinion, indicates that between December 15th, 1952’ and July 25th, 1953, there was disability-which resulted from the accident.
Let us assume that an employee on January 1st sustains temporary disability as. a result of accidental injury and that on February 1st he is able to return to work: and that after he returns to work, he dies on August 1st, as a result of the accidental injury which caused the temporary disability. Would he, had he lived, been entitled to' compensation for the six month period from February 1st, when he returned to work, to August 1st, when he died ? We think not. Because, although he later died as a result of the original injury, there was no disability during that six-month period. Ap~ *247 plying that hypothetical' situation to the facts here, we find that there is ñothing in the record which indicates that between December 15th, 1952 and July 25th, 1953, Warning was disabled as a result of any accident which may have occurred in December, 1952. Consequently, since we find that the record shows that the disability had terminated on December 15th, 1952, the widow, as his personal representative, cannot recover compensation beyond that time.
The judgment appealed from is amended by the substitution of Mrs. Esther Warning, widow of William Warning, as plaintiff-appellant, and as thus amended the judgment is affirmed at the cost of appellant.
Amended and affirmed.