65 So.2d 360 (1953)
TAYLOR
v.
MANSFIELD HARDWOOD LUMBER CO.
No. 7896.
Court of Appeal of Louisiana, Second Circuit.
April 30, 1953.
Rehearing Denied May 29, 1953.
*361 Harry Fuller, Winnfield, for appellant.
Theus, Grisham, Davis & Leigh, Monroe, for appellee.
GLADNEY, Judge.
Defendant appeals from a judgment in favor of plaintiff and her minor children, awarding compensation by reason of the death of her husband, O. B. Taylor, on June 18, 1951.
The principal issue presented by this case for determination is whether an employment accident on February 7, 1951, contributed to or hastened the death, caused by cancer.
Taylor was employed as a log cutter on January 3, 1951, by the Mansfield Hardwood Lumber Company, defendant herein, and as a prerequisite to employment was required to pass a satisfactory physicial examination. His record discloses constant employment until February 14, 1951, after which date and until his death he was unable to work.
On February 7, 1951, Taylor and other employees were being transported from Winnfield to their work in the woods in a truck owned by defendant and being driven by an employee. On this trip the truck skidded into a ditch, causing some of his fellow employees to be thrown on top of and against Taylor, forcing him against the back of the bench upon which he was seated, and against the edge of a 2" × 6" piece of timber constituting a part of the truck. Taylor immediately complained that he was hurt in the region of his back, hips and chest. He continued to complain to his fellow employees upon the job that day and during the six days thereafter when he continued to work, complaining of pain and soreness in his back and legs.
The testimony of the widow and Taylor's fellow workers is convincing that prior to the date of the accident the deceased was apparently well and strong, made no complaints and was of a cheerful disposition, but from February 7 to 14, 1951, he complained of his back, chest and legs and attributed such injuries to the accident.
Prior to the accident the only evidence relating to any illness was given by Dr. Roy V. Martin, who testified that during January, 1951, Taylor was treated for a minor respiratory trouble, influenza. There was no other evidence indicative of illness or disability prior to February 7, 1951.
Medical testimony in the case was given by Dr. Henry T. Parker, a chiropractor, Dr. John T. Mosley, Dr. John G. Riddler and Dr. Roy V. Martin.
That Taylor's death was due to cancer is not questioned. The malignant growth was discovered on May 1, 1951, when Dr. Riddler first examined the patient. It was an accepted fact at that time that the malignant growth had spread to several parts of the body and the condition of the patient was hopeless. Although neither Dr. Mosley nor Dr. Martin recognized the existence of the cancer until reported by Dr. Riddler, *362 they seem of the opinion the disease existed at the time of the accident.
From February 7 to March 3, 1951, Dr. Parker treated Taylor for a slipped fifth vertebra which he stated was pressing on a nerve. From March 21st to the latter part of April Dr. Mosley hospitalized the employee and recognized the injury as one arising under the compensation act, LSA-R.S. art. 23:1021 et seq. He attempted to relieve the pain suffered by Taylor by stretching the sciatic nerve. Dr. Mosley sent Taylor to the Highland Clinic where he was examined by Drs. Overdyke and Duncan and later by Dr. Riddler. Dr. Martin saw Taylor for the first time after the accident on May 22d, when Taylor was placed under his care by Dr. Riddler, the cancerous condition then being far advanced.
Dr. John G. Riddler who presently resides in Jackson, Tennessee, examined O. B. Taylor on May 1, 1951, at the Highland Sanitarium. Just prior to this time Taylor had received an orthopedic examination from Dr. Don F. Overdyke, Jr. and a psychiatric examination from Dr. D. H. Duncan, the latter referring the patient to Dr. Riddler. The examination revealed a large mass in the region of the right greater trochanter and a similar lesion in the right infrascapular area. X-rays disclosed marked destruction of the bone of the right femur and one rib on each side of the chest. The pathological report showed the tumor was a neuroblastoma. Dr. Riddler reports that Taylor complained of his right hip, and weight loss, stating that he was in good health until February 7, 1951, but that while riding in a truck he was pushed against the side and from that time on he noticed increase in pain in the right femur. Prior to admission to the sanitarium he had lost at least twenty pounds and had been unable to work for the past two weeks.
The testimony of Dr. Riddler was taken by deposition. He relates he told both Mr. and Mrs. Taylor that the injury of February 7, 1951, contributed in no way to the cause or development of the disease. He stated his opinion that the tumor was in an advanced stage when he first saw it, was of the progressive type, and would have developed without any external force. He testified that some tumors can be accelerated in growth by trauma, but that he did not think that happened in this case.
Dr. Mosley testified that he did not detect the malignant growth when he examined Taylor on several occasions in March and April, but that after receiving the report of Dr. Riddler's examinations, he re-examined his X-rays and they revealed a diseased condition of the femur and hip. He expressed the belief that when Taylor was under his care the mass had not developed in the chest or thoracic area. He was sure, however, that the pain of which Taylor was complaining was due to pressure symptoms. He testified he could not say when the cancer started but that he did not think that the accident of February 7th had any connection with the tumor. He was of the opinion that trauma could aggravate or accelerate the growth of a malignant tumor. It is his opinion that the original tumor was at the end of the spine and that parts of this broke away and spread off to the hip and other parts of the body.
Dr. Martin, of course, did not see Taylor until May 22d, at which time the condition was hopeless, the cancer being far advanced at that time. He expressed the belief that trauma can aggravate a pre-cancerous condition, stating that every manipulation or pressure which can itself produce a lesion would be capable of stirring up a malignant growth. He declined to give a positive answer to the question of whether or not Taylor would have lived longer if he had not had the accident.
From the foregoing medical evidence we may infer that all of the doctors expressed the belief that a diseased cancerous condition can be aggravated by trauma. In the instant case Drs. Riddler and Mosley expressed the belief that the accident of February 7th in no wise contributed to the progress of the disease which remained undiscovered in Taylor's body until May 1st. Dr. Martin, on the other hand, seemed to lean to the view that any trauma capable of causing a lesion would affect the extension and development of the cancer.
In an opinion obviously prepared most thoroughly the trial judge concluded that *363 the evidence was favorable to the plaintiff and awarded compensation.
The record in this case is somewhat unusual because of the paucity of expert testimony. None of the medical witnesses who testified claimed either through study or experience to have any special knowledge of cancer. The testimony adduced to show a relationship or nonrelationship between the accident of February 7th and the cancer discovered on May 1st is not entirely comprehensive. While it is true that Dr. Riddler was specific in stating his opinion that the accident did not contribute to the progress of the cancer, this opinion was based solely on the belief the cancer was in a far advanced stage on February 7th, although nearly three months had elapsed between the accident and the time Taylor was first observed by Dr. Riddler. Dr. Mosley also stated his belief that the accident did not contribute to the progress of the disease. He does not give any reason for this statement. On the other hand, he indicates that during the latter part of March and April while the employee was under his care he accepted as a fact the cause of the disability was from the accident and he further stated at that time it was his opinion that there was no cancerous condition in the thoracic cavity and in the region of the chest.
It should be observed that when a decision must rest upon the opinion of expert witnesses, proof does not require that the opinion be established as true. Whenever the evidence and argument are sufficient to induce belief, the conclusion constitutes proof. Certainly in order for trauma to have a causal relationship to an injury, affecting it in such a manner as to give rise to a compensation claim, certain elements of proof must be found in the evidence presented. Seemingly, in order to prove aggravation of the pre-existing tumor by injury, it is essential to establish the tumor existed prior to the injury, that perceptible damage was done to it by the injury, and the tumor's subsequent course was accelerated.
Perhaps, however, the strongest persuasive factor in cases of this kind is the presence of symptoms that continue to give evidence of the continuance of disability from the time the injury is sustained to the time the tumor clearly demonstrates its destructive power.
Perhaps the first case in which compensation was awarded for the aggravation of a pre-existing disease or the activation of a dormant disease was that of Behan v. John B. Honor Company, Ltd., 1918, 143 La. 348, 78 So. 589, L.R.A.1918F, 862. In that case compensation was granted to a longshoreman who received a blow upon the head. In discussing the relationship of the injury to the disease, Judge O'Niell found that prior to the accident the employee apparently was in sound health, attending to his daily occupation without inconvenience, was working regularly and earning good wages, but because of the injury from the accident and the immediate change in his physical condition there could be no doubt the accident superinduced and was the proximate cause of the disability of which complained. His form of reasoning has been followed in: Donahoe v. Scharfenstein & Son, 1923, 154 La. 815, 98 So. 256; Broussard v. Union Sulphur Company, 1927, 5 La.App. 340; Causey v. Kansas City Bridge Company, La.App., 1939, 191 So. 730; Custer v. Higgin's Industries, Inc., La.App., 1946, 24 So.2d 511; Vautrot v. Maryland Casualty Company, La.App., 1947, 32 So.2d 500.
Reverting to the evidence in the instant case we observe that O. B. Taylor was of the opinion that his disability came from the accident on February 7th. He gave such a statement to each of the doctors who examined him. From that date until the discovery of the cancer on May 1st, Taylor continued to make complaints of pain, thus indicating a continuance of his disability from the time of his injury to May 1st. Both Dr. Parker and Dr. Mosley were of the opinion that plaintiff's disability and complaints arose from the accident and both of the doctors treated him accordingly. Prior to the report of Dr. Riddler as to his findings, the defendant likewise was of the opinion that the accident caused the disability. Plaintiff's first complaints were of soreness in his chest, back and legs. The record does not inform us of any abrasions, *364 contusions and bruises but apparently the shake-up was sufficient to cause Taylor to think that his soreness and pain were due to the accident. Both Drs. Riddler and Mosley stated they did not think the accident contributed to the progress of the disease which is equivalent to a belief the trauma was insufficient to cause a lesion or a break or tear in the tissues. Dr. Martin testified to the contrary. Evidently, Judge Moss, the trial judge, believed that a lesion could have resulted from the accident. In the light of all the evidence we cannot say he was in error.
It is only sufficient that plaintiff show that the accident during his employment caused an injury which contributed to the disability or hastened the progress of his disease, thereby shortening his life. It is not required he prove the exact cause of his disability. See: Phillips v. Yazoo & M. V. R. Co., La.App., 2 Cir.1938, 183 So. 43, 46; Clifton v. Glassell-Taylor Co., La. App., 2 Cir.1944, 19 So.2d 590; Lowery v. W. Horace Williams Company, La.App., 1 Cir.1942, 8 So.2d 704.
It was pointed out by this court in Biggs v. Libbey-Owens-Ford Glass Company, Inc., 1936, 170 So. 273, that the difference in the employee's condition arose while he was performing the services of his employment and even though the disability was not immediately caused by an unusual strain of physical effort or some awkward movement of the body, it was sufficient for recovery that the affected parts of his body gave way while at work for defendant.
It is often pointed out that courts cannot decide cases on possibilities, even though it be a compensation case in which the court always construes the law and facts liberally.
The rule announced in Behan v. John B. Honor Company, Ltd., supra, and repeatedly followed in the cases above cited, is predicated on manifestation of symptoms that continue to give evidence of the continuance of disability from the time the injury is sustained to the time when the disease manifests its effects upon the employee, and medical opinion does not refute a causal relationship between the injury and the disease.
We have examined with care, but do not find controlling the authorities cited in the able brief filed by counsel for the defendant. Generally these cases were decided adversely to the compensation claimant because of his failure to show a continuance of symptoms bridging the gap between the accident and the destructive effect of the disease or were predicated upon a preponderance of the medical testimony deemed sufficient to rebut the continuity of symptoms.
In cases involving an aggravation of a pre-existing cancer seemingly the medical profession is uncertain as to the relationship of trauma to the progress of the disease. The observation that the cause of cancer is unknown was made in Broussard v. Union Sulphur Company, 1927, 5 La.App. 340. The cause of cancer is still unknown. For these reasons professional opinions on this subject must be appraised with consideration given to the limitations of professional knowledge. The point is illustrated in the testimony of an outstanding doctor in Vautrot v. Maryland Casualty Company, supra, wherein Dr. Guy Caldwell of New Orleans, stated [32 So.2d 504]:
"If there were continuing symptoms from the time of the fall through the time of the severe symptoms which indicated the actual collapse of the vertebra, you would have to think of the two as being related."
The court a quo found that the facts of this case come within the holdings in the Causey v. Kansas City Bridge Company and the Custer v. Higgins Industries, Inc., cases, above cited. Our view of the record fails to convince us that there is manifest error in the ruling of which complained.
A collateral question arises from the fact that defendant voluntarily paid medical expenses amounting to $525, a sum in excess of the maximum of $500 provided in the statute, LSA-R.S. art. 23:1203, but refused to pay a bill of $197.60 due Dr. Roy V. Martin, a physician employed by Taylor. *365 There is no dispute as to the correctness of the bill. The judgment allowed plaintiff the sum of $185 for doctors', hospital, and medical bills, which sum we are advised was the prorated amount of Dr. Martin's bill, arrived at after all such bills were reduced proportionately to equal the sum of $500. Neither side has complained of the judgment. Plaintiff alone is entitled to complain and there is no answer to the appeal.
The rule is, a judgment decreeing liability of an employer for medical expenses of a compensation claimant should be in favor of the claimant, and distribution of amount of the judgment among those rendering the services, where the total amount for such services exceeds the judgment, is to be made by the employee and not in the judgment itself. See: Lanoue v. Century Indemnity Co., La.App., 1947, 30 So.2d 207; Bettison v. Ford, Bacon & Davis, Inc., La.App., 1942, 11 So.2d 25; North Louisiana Clinic v. Breen, La.App., 1939, 193 So. 208.
For the foregoing reasons the judgment from which appealed is affirmed at appellant's costs.