235 So.2d 426 (1970)
Orterre ARDOIN, Plaintiff-Appellee,
v.
HOUSTON FIRE AND CASUALTY INSURANCE COMPANY, Defendant-Appellant.
No. 3089.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1970.
Garrett, Ryland & Downs, by Donald M. Garrett, Alexandria, for defendant-appellant.
Tate & Tate, by Donald J. Tate, Mamou, for plaintiff-appellee.
Before TATE, HOOD and MILLER, JJ.
MILLER, Judge.
Houston Fire & Casualty Insurance Company appeals the trial court's award of one hundred weeks of workmen's compensation benefits to Orterre Ardoin for the loss of vision in his right eye. The award represents either the loss of a physical function or the loss of an eye, and plaintiff has not appealed nor answered the appeal seeking an award for total permanent disability.
The sole issue is whether or not the loss of plaintiff's eye had any causal connection with his job with defendant's insured, the Louisiana Department of Highways. The trial court found that plaintiff lost sight in his right eye when he sustained unusual stress or strain resulting from his sudden application of brakes and barely avoiding an intersectional collision.
Plaintiff's age does not appear at any place in the record, but he was a known hypertensive for a number of years prior to the April 4, 1968 alleged accident. Plaintiff had been and still is employed by the Louisiana Department of Highways as an Operator I. In that capacity, he drives trucks and operates rollers or lifters and performs miscellaneous tasks related to maintaining the highway.
At the end of the April 4, 1968 day's work, plaintiff was driving the truck back *427 to the highway barn. His passengers were Messrs. Horace Ardoin (no relation to plaintiff) and Alexson Deville. All three explained that plaintiff stopped for a stop sign, then started to enter the main highway when there was an oncoming car. The passengers yelled a warning causing plaintiff to slam on his brakes after he had moved forward only four to six feet. The motor was stalled in the process of stopping.
Plaintiff testified that
"We all got pretty shook up, I had a kind of a weak spell, like a blackout. We said `Well we had a close call.' I pull off on the side of the road and I said, `I don't know what's the matter with me, I don't know if I'm not going blind.' I checked myself and my eye was gone." Tr. 34.
Horace Ardoin testified that after the motor stalled
"* * * he crank, he start for go on the road and he said, `I feel funny.' He stopped. He say, `I don't know if I'm not blind.' He checked his eye, he said he saw he have a eye blind." Tr. 79.
Alexson Deville testified
"So the car passed, he started the truck again, went a little piece to the right and he parked on the shoulder. He said, `Well something must have happened, I feel funny.' `It seem like I don't see good no more.' So he checked his eye, he noticed he didn't see in one eye." Tr. 98.
Plaintiff continued to drive the truck to the highway barn and tried to report the accident, but his foreman was not there. He reported the accident the next morning and was sent to see a physician. On April 5, 1968 plaintiff saw three physicians.
Dr. Aswell who referred plaintiff to Dr. P. W. LaHaye of Eunice who referred plaintiff to Dr. Ramson K. Vidrine of Ville Platte. Drs. Aswell and LaHaye did not testify and both parties stipulated that there would be no presumption against either party for the failure to take their testimony.
Dr. Vidrine saw that plaintiff sustained a hemorrhage in the retina, and agreed with the diagnosis of the opthalmologists that plaintiff had a thrombosis of the central retinal vein. Dr. Vidrine referred plaintiff to Dr. Robert Edward Schoel, board qualified opthalmologist of New Orleans. He conducted his examination on April 8, 1968 and the only history that he took was "Four days ago I noticed loss of vision in my right eye." Dep. 4. On cross-examination Dr. Schoel admitted that he was not examining to determine whether or not the condition that plaintiff had was related to any type of episode of straining or stopping or anything else. Dep. 18.
Dr. Schoel found that plaintiff sustained a thrombosis of the central retinal vein; that this caused multiple hemorrhages within the retinal area and these hemorrhages interfered with plaintiff's vision. It is not unusual that plaintiff suffered no pain when the thrombosis occurred.
Dr. Schoel was firm in his opinion that plaintiff's condition was not related to the sudden stopping to avoid the automobile accident. Dep. 17. He has treated many patients for a similar condition, but has never related the condition to trauma of any kind. Although there is a medically reported case where the patient's condition was related to trauma, there was a direct blow to the eye in that case. Dr. Schoel concluded that it was coincidence that plaintiff's condition was noticed at the time of the unusual stress.
On cross-examination Dr. Schoel admitted that strain and emotional upheaval do elevate blood pressure and cause contraction of blood vessels (Dep. 21); and that it is possible that the occlusion in plaintiff's central retinal vein had advanced to the point where even the slightest increase of blood pressure or contraction in the artery could cause hemorrhaging. Dep. 28. By the same reasoning, these factors could *428 also cause a thrombosis. Dr. Schoel admitted that veinous occlusions in the extremities have been related to strain, but not in the eye. Dep. 23.
Dr. Schoel explained his conclusion that plaintiff's condition was not related to any trauma by stating at pages 35 and 36 of his deposition:
"A. Well, there is one big difference here, as far as I can see the type of loss of vision that he have, this is not a traumatic experience that was noticed immediately, it was not a case of an artery that was blocked, it was not noticed just like that, it was a blurring of the vision, it is not like if it were described as being an instantaneous loss, it is different and even if you have a sudden loss of vision when it occurs because of trauma you have other things that go with it, I don't know how you could determine specifically when there is a loss of vision, usually when it occurs one relates it to a specific incident."
We cannot say that the trial judge was manifestly erroneous in concluding that Dr. Schoel was not concerned with plaintiff's history of the accident when he was treating plaintiff; and that the evidence is convincing that plaintiff did "notice immediately" and "instantaneous loss" which was related "to a specific incident."
Dr. Philip M. Laborde, board-certified opthalmologist practicing in Alexandria, Louisiana examined plaintiff on behalf of defendant on August 14, 1968. Ardoin gave a history of having had "a rather sudden loss of vision in his right eye on April 4, 1968" and several days later, he developed pain in his right eye. Dr. Laborde was unable to visualize the retina because of the glaucoma which had developed in the eye. But all of his findings were consistent with a diagnosis of a thrombosis of the retinal vein in the right eye. Many patients with this problem "have no contributing medical cause." "People with hypertension or diabetes are more susceptible to have it." Dep. 11.
Dr. Laborde was firm in his opinion that plaintiff's condition was not related to any trauma. When asked to explain why, he testified.
"Well it is kind of hard to state why you don't think somethingI just don't see any reason why it should be associated with it, I just don't see anylet's say as far as I know it is not associated with it. I have never seen it happen in any case of anybody who had trauma or heard of it being associated with itI don't think it is generally accepted that it is a traumatic insultI just don't see how a sudden stop would have any effect on it." Dep. 13.
But at page 26 of his deposition, Dr. Laborde admitted that he could "not say catagorically that there is nothing in a situation like this that could not have any relation whatsoever, it is theoretically possible."
And under cross-examination Dr. Laborde agreed that
"* * * highly elevated blood pressure is a contributing factor to the central retinal vein occlusion. I am not aware that in a person who is not hypertensive that who comes on a sudden or emotional stress that the sudden elevation of the blood pressure does cause physically the occlusion of the central retinal vein. Just because this is not accepted medical practice does not necessarily mean that it is impossible for this to happen. It is just unknown to us at this time." Dep. 26. (Similar testimony at Dep. 18, 19).
So far as the depositions of Drs. Laborde and Schoel indicate, neither physician was aware of the fact that plaintiff was hypertensive prior to the accident. His treating physician, Dr. Vidrine, was aware of this fact.
Dr. Vidrine is the only physician that relates the loss of plaintiff's eye to the April 4, 1968 accident. It was his opinion that
"* * * the basic problem is very similar to a heart attack, the man that has a *429 heart attack while he's straining. And the theory that I accept and I think is closer to the truth medically or physiologically is the theory of vascular spasms, and any time that some person is suddenly subjected to undue strain, that you have a certain amount of spasm in the arteries and the veins, and that this spasm occurs in the vein or the artery and practically occluded itself from (the) tightening down, and when this occurs, the blood is limited and if the blood flow slows down enough, you can get some coagulation in the blood vessel which will cause the thrombosis and eventually blockage or an infunction of the area supplied by the blood vessel or drained by the blood vessel. Other doctors feel that the other theories that when you get undue strain, you get a sudden rise in blood pressure, and this will disturb the vascular process to the point where it may cause a thrombosis. To me the first theory is the most likely correct one. I know that the first one is most likely correct for arteriole occlusion, and I think probably for veinous occlusion too, blood vessels. I can't prove this, I don't think anybody can. I know I've been involved in similar situations with patients that have sustained heart attacks, coronary thrombosis while straining, and we usually leave it toas an opinion saying that this could happen. And I think thisthis can happen." Tr. 117. Similar testimony also at Tr. 123.
The theory of plaintiff's case is the familiar doctrine of the workmen's compensation jurisprudence that, when as a result of unusual stress or strain encountered in the performance of his duties, a workman experiences a breakdown of some bodily function or injury to some organ, the resulting disability is compensable. This principle is most frequently applied in heart attack cases. But this principle was also applied to the loss of vision in the eye in the case of Renfrow v. Caddo Parish Police Jury, 155 So. 291 (La.App.2d Cir. 1934). There the court affirmed an award of compensation stating its conclusion:
"* * * that plaintiff was afflicted with blood pressure of a dangerous type and hardening of the arteries, both of which were of long standing; that these two diseases were of a progressive character and were aggravated by the nature and character of the heavy work he was doing for the policy jury; that * * * while in the discharge of his duties, and whether as a result of any extra physical exertion or strain or not is immaterial to the case, blood vessels of the eye gave way; the ultimate result being loss of sight of that eye."
The weakness in plaintiff's case is due to the poverty of medical science in the area of inquiry. As Dr. Laborde testified (Dep. 31) medical science really has no definite explanation of the causative factors for this type of retinal vein thrombosis suffered by plaintiff.
But this weakness is offset by the application of the jurisprudential principle that, in determining whether a claimant's disability is causally related to an accident, great weight attaches to the fact of a sudden change from a condition of health or ablebodiedness prior to the accident to one of disability immediately thereafter. Nixon v. Pittsburgh Plate Glass Company, 161 So.2d 361, 367 (La.App.3d Cir.1964); Taylor v. Mansfield Hardwood Lumber Company, 65 So.2d 360 (La.App.2d Cir.1953). In Taylor, it was stated at 65 So.2d 360, 363 that
"* * * when a decision must rest upon the opinion of expert witnesses, proof does not require that the opinion be established as true. Whenever the evidence and argument are sufficient to induce belief, the conclusion constitutes proof."
We distinguish the cases of Duhon v. Pittsburgh Plate Glass Company, 179 So.2d 469 (La.App.3d Cir.1965), and Landry v. Parkwood Products, Inc., 201 So.2d 306 (La.App.3d Cir.1967), cited in support of appellant's contention that plaintiff did not bear the burden of proving a causal *430 connection between the alleged accident and his present disability. In Duhon, plaintiff's condition at trial was no worse than it was before the accident. In Landry, there was no proof that claimant had been subjected to excessive heat or to strain when he suffered his heart attack. In both cases, the trial courts' decision was affirmed.
In this case, claimant suffered unusual stress. Immediately thereafter, he had severe blurring of vision in the right eye and shortly thereafter lost all sight in that eye. We do not find manifest error by the trial court, and must therefore affirm. All costs are to be paid by defendant-appellant.
Affirmed.