GULOTTA, Judge.
This is an appeal from a judgment awarding total and permanent workmen’s compensation benefits to an employee welder in the sum of $49.00 per week for a period of 500 weeks.
On February 23, 1972, while in the course of his employment, plaintiff injured *485 his lower back when knocked against a metal valve. Defendants concede that plaintiff sustained an injury to his back which activated a pre-existing congenital abnormality. However, Empire claims the aggravated condition caused by the trauma was subsequently brought under control. According to defendants, plaintiff’s disability (if, indeed, a disability exists) results from the congenital abnormality and is not the result of an aggravation of the abnormality caused by trauma.
Finally, it is defendants’ claim that subsequent to the injury plaintiff became gainfully employed as a welder as well as in other physically demanding employment and carried out these jobs without suffering substantial pain.
We fail to find merit in either of defendants’ contentions. The record supports plaintiff’s claim that he was afflicted with a congenital abnormality of the spine,[1] aggravated by the work-related trauma resulting in permanent and total disability. Also, the evidence clearly indicates that plaintiff is unable to engage in heavy lifting, which is one of the tasks required of a welder or of work of a similar character.
DISABILITY
Dr. Jack Wickstrom, an orthopedic surgeon, saw plaintiff on July 21, 1972, August 3, 1972 and August 24, 1972. On his initial visit, plaintiff complained of pain in the lower lumbar region. On a subsequent visit on August 3, 1972, he complained of pain in the back, thigh and buttocks. Dr. Wickstrom found no muscle spasm. He did find that plaintiff was suffering from a congenital spinal defect. Examination did not reveal a herniated disc nor impairment of the nerve function. It is Dr. Wickstrom’s opinion that the trauma aggravated the pre-existing congenital condition which had been asymptomatic. Based on the x-ray findings, Dr. Wickstrom stated that he would not recommend heavy type work which would include lifting because of the danger of re-injury. The doctor further stated that perhaps plaintiff could return to welding if he were not required to do any lifting.
Dr. Byron Unkauf, an orthopedic surgeon, saw plaintiff initially on December IS, 1972, and on approximately eight subsequent visits between the initial visit and plaintiff’s last visit on February 1, 1974. At the time that Dr. Unkauf saw Stipkov-ich, plaintiff was employed as a security guard. According to Dr. Unkauf, plaintiff, in his present condition, is unable to do any heavy labor requiring any lifting. It was the doctor’s opinion that plaintiff was unable to return to his former employment as a welder and had suffered a permanent, total disability. He further testified that persons afflicted as is plaintiff usually get along very well until an injury occurs; however, after such an injury, when they return to heavy work, they commence to have trouble. Dr. Unkauf recommended a spinal fusion.
Dr. Stuart Phillips, also an orthopedic surgeon, saw plaintiff on October 30, 1972. He testified that from plaintiff’s history, Stipkovich had suffered no back aches prior to the injury. He found no muscle spasms, but he recognized, as did the other medical experts, that plaintiff suffered a spina bifida occulta. Plaintiff was again seen by Dr. Phillips on January 29, 1973. Dr. Phillips stated that plaintiff’s pain was subjective, however, this particular type of condition is not one uncommonly associated with back pain after a trauma. It is Dr. Phillips’ opinion that plaintiff’s back problems should respond to conservative treatment. He indicated that if pain persists, perhaps a fusion might be necessary. Dr. Phillips was of the opinion that plaintiff should not return to work which required *486 heavy lifting or repetitive type stooping or bending. The doctor felt that plaintiff suffered a 25% disability which is due to the congenital abnormality and his predisposition to further injury. He stated that the disability was predicated on the defect and the presupposition of future injury. It was his opinion that if plaintiff did not limit his activities, he would have further trouble.
The testimony of Dr. Blaise Salatich, orthopedist, substantially corroborated the testimony of Dr. Unkauf with the exception that Dr. Salatich found muscle spasm in November, 1973. Neither Dr. Unkauf nor the other doctors who examined plaintiff found a spasm.
Dr. Edward S. Connolly, a neurosurgeon, found no nerve compression signs in September, 1972, and did not feel that anything was required in the neurological field. It was Dr. Connolly’s opinion that plaintiff could perform the duties of a welder. Dr. Connolly did state that it was possible that symptoms when a traumatic injury occurred, such as that suffered by plaintiff, could cause some aggravation of the congenital abnormality which, by itself, does not normally produce symptoms. It was his opinion that if anyone hurt his back and then resorted to heavy work, there would exist a potential for aggravation of the back symptoms.
Stipkovich testified that prior to the injury, he had no complaints of any back pain. Plaintiff stated that after the February, 1972 injury, he began having problems with his back. Stipkovich’s complaints were of pain in the lower back and middle spine radiating into the leg. It is plaintiff’s testimony that because of the continued pain, he was compelled to terminate his employment with the defendant company approximately four months after the injury. He further indicated that he suffered pain when doing heavy lifting or when engaging in hard work. He stated that he attempted to pursue various types of employment, but he was unable to continue in any work which required physical labor because of the continuous pain suffered in the lower back.
Significantly, no indication exists from any of the doctors that plaintiff’s complaints were anything other than truthful. The trial judge, in his reasons for judgment, stated:
“The Court believes the testimony of the Plaintiff, Mark Stipkovich. This is only a matter of credibility, and the Court finds the plaintiff credible.
“The Court finds that the Plaintiff cannot do heavy work of the type he was doing at the time of the accident.”
Firmly engrained in our jurisprudence is the rule that great weight must be given to the findings of fact of the trial judge, especially when those findings pertain to the credibility of witnesses.
We are in agreement with the trial judge that the record supports a finding that plaintiff cannot do heavy work, including lifting, which, according to plaintiff, is an integral part of the duties of a welder.
TRAUMA RELATED AGGRAVATION OF PRE-EXISTING ABNORMALITY
It is defendants’ position that the record does not contain any medical evidence that the disability was not the result of the congenital spinal abnormality. Defendants claim that plaintiff failed to carry his burden of proof of showing that the disability was caused from the aggravation of a pre-existing abnormality caused by trauma and not by the pre-existing congenital abnormality alone. We do not agree. A consideration of plaintiff’s pre-injury work history compared with his post-injury work efforts leads to a different conclusion.
Prior to the accident, Stipkovich maintained a steady employment pattern. Plaintiff had been apparently free from *487 any physical impairment which might have prevented him from performing his duties. He worked for Empire Menhaden as a welder from February, 1968 until September, 1968. From October, 1968 through May, 1969, Stipkovich worked as a welder for Quinn Menhaden Fisheries. From June, 1969 through February, 1970, plaintiff was employed as a hot shot truck driver for Mon-Arc Welding Supply, Inc. From February, 1970 through July, 1971, claimant was an inspector for the Pla-quemines Parish Highway Department. Finally, in July, 1971, plaintiff was re-employed by Empire.
Immediately following the accident, plaintiff told his foreman that he did not think the injury was bad enough to go to the doctor, and he continued to work. However, approximately three weeks thereafter, Stipkovich saw the company doctor because the pain had gradually increased. Upon his return to work, Stip-kovich experienced pain when lifting. Fifty-five working days after the injury, claimant terminated his employment as a result of back trouble. Immediately thereafter plaintiff became employed as a welder with Fairchild Construction Company. Continued pain forced Stipkovich to discontinue welding; however, he was permitted by Fairchild to work as a laborer, bulldozer operator and crew boat operator. According to plaintiff, he was terminated by Fairchild on July 22, 1972 because of persistent pain.
Thereafter and until April, 1973, Stip-kovich drew unemployment benefits and supplemented these benefits with income from part-time employment as a security guard. Plaintiff also worked as a school bus washer and as a service station attendant. He was forced to leave his job as a service station attendant as a result of back pain. Pain in the legs caused plaintiff to cease working as a security guard.
After April, 1973, plaintiff began working as a bulldozer operator for Jefferson Disposal Company and discontinued work at this job after only three weeks because he continued to suffer back pain. Plaintiff then returned as a full-time security guard but terminated this employment after approximately five months, again because of leg pain. Subsequently, plaintiff worked for short periods of time as a truck driver for Black Equipment Company and for Gay, Inc. He worked for D. L. Brundage as a carpenter’s helper. Stipkovich was forced to terminate his employment with Brundage because of pain in the lower back, spine and legs.
In Odom v. Kaiser Aluminum & Chemical Corporation, 282 So.2d 580 (La.App., 4th Cir. 1973), we were presented with a problem similar to the one in the instant case. The claimed disability in Odom resulted from an aggravation of a pre-exist-ing congenital defect of the back. In that case, we stated:
“Our law is well settled that under workmen’s compensation the employer takes the employee as he finds him and that an employee disabled by an accident is not to be denied compensation merely because he was already afflicted with a disease which, in its ordinary progress, might eventually have caused disability without any accident, and the accident merely induced disability. * * *”
In determining whether a claimant’s disability is causally related to an accident, great weight attaches to the fact of a sudden change from a condition of health or ablebodiedness prior to an accident to one of disability immediately following thereafter. Ardoin v. Houston Fire and Casualty Insurance Co., 235 So.2d 426 (La.App., 3d Cir. 1970).
Plaintiff’s medical history and work record prior to the injury indicate that the congenital abnormality, alone, was not an impediment to his ability to weld and do heavy lifting. We are convinced that plaintiff’s history and record subsequent to the injury support the conclusion that the injury caused the aggravation of the con *488 genital spinal abnormality. As a result, Stipkovich is unable to do heavy lifting and return to his occupation as a welder.
Accordingly, we conclude plaintiff is totally and permanently disabled. We affirm.

Affirmed.

BEER, J., dissents with written reasons.

. Spina bifida occulta is defined in the record as a congenital defect of the spine where there exists a lack of union or fusion of the vertebrae resulting in a space between the vertebrae.