LABORDE, Judge.
This is a workmen’s compensation suit. Plaintiff, Robert Istre, contends that he sustained permanent and total disability as a result of an injury which he sustained in the course of his employment with defendant, Hudson Engineering Corporation. Following a trial, the trial judge, finding that plaintiff failed to prove causal connection between the accident and any disability, rendered judgment rejecting plaintiff’s demand. The principal issue is whether plaintiff sustained his burden of proving a causal connection between the accident and his disability.
The facts are that plaintiff was employed by Hudson Engineering Corporation as a carpenter’s helper. On October 26, 1976, plaintiff was operating an air powered drill in an attempt to penetrate a piling. As plaintiff was drilling the bit came out of the piling and struck plaintiff’s leg below *367 his left knee, causing a cut. After the incident, plaintiff was taken to Dr. Russell. The doctor cleansed the cut, bandaged it, and sent plaintiff back to work. Plaintiff testified that when he returned to work his knee began to hurt to such an extent that he clocked out early. Approximately a week after the accident, plaintiff, complaining of pain in his left knee, was examined by Dr. Savoy. Dr. Savoy referred plaintiff to Dr. William Akins, an orthopedist. After Dr. Akins informed plaintiff that he could not find any objective evidence of a knee injury, plaintiff sought treatment from Dr. George Schneider, an orthopedic surgeon.
Dr. Schneider examined plaintiff for the first time on January 24, 1977, approximately three months after the accident. Plaintiff related a history to Dr. Schneider that his left knee began hurting after a drill bit had struck his leg, causing him to fall and twist his left leg.
After examining plaintiff, Dr. Schneider felt that plaintiff’s pain was a result of an internal derangement in his left knee caused by a spraining injury. On March 18, 1977, Dr. Schneider performed a lateral menisectomy and a chondrectomy of the left knee cap. Plaintiff contends he is disabled as a result of his knee injury.
The burden of proof in compensation lawsuits was described by the Supreme Court in Prim v. City of Shreveport, 297 So.2d 421 (La.1974) as follows:
Although procedural rules are construed liberally in favor of workmen’s compensation claimants, the burden of proof, by a preponderance of the evidence, is not relaxed. Thus, the testimony as a whole must show that more probably than not an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, the plaintiff’s case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. Jordan v. Travelers, 257 La. 995, 245 So.2d 151 (1971); Hebert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286 (1965); Hogan v. T. J. Moss Tie Co., 210 La. 362, 27 So.2d 131 (1946); White v. E. A. Caldwell Contractors, Inc., La.App., 276 So.2d 762 (1973); Richard v. Guillot, La.App., 271 So.2d 719 (1972); Nellon v. Harkins, La.App., 269 So.2d 542 (1972).
The standard of review which we must apply to questions of fact was stated by the Supreme Court in Canter v. Koehring Co., 283 So.2d 716 (La.1973) as follows:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error.”
“Manifest error” was explained by the court in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) as follows:
We said the appellate court should not disturb this factual finding in the absence of manifest error. . “Manifestly erroneous,” in its simplest terms, means “clearly wrong.” We, said, then, that the appellate court should not disturb such a finding of fact unless it is clearly wrong.
We feel the trial judge was clearly wrong for the reasons we shall set out herein.
In discussing causal relation in Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977), the court noted the Prim decision, supra, but said:
. . Nevertheless, “it is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover. The complaint need show only by a preponderance of the evidence that somehow the employment caused the disability.” Malone Workmen’s Compensation Law, Section 252 at p. 300 (1951).
The trial judge in his written reasons for judgment did not believe that “claimant’s lifestyle in either his working activities or his recreation ever changed *368 very much.”[1] He cites Johnson v. Travelers Insurance Company, 284 So.2d 888 (La.1973) for the rule that great weight attaches to a sudden change from health and ablebodiness to disability immediately after the accident. We agree, but believe on reviewing Johnson and the associated cases, Matte v. Power Rig Drilling Company, Inc., 260 So.2d 19 (La.App. 3rd Cir. 1972), writ refused 261 La. 1048, 262 So.2d 37; Ardoin v. Houston Fire & Casualty Company, 235 So.2d 426 (La.App. 3rd Cir. 1970); Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969), that plaintiff need not demonstrate a drastic change or complete reversal of his lifestyle to meet this requirement.
In Bertrand, supra, the court on rehearing stated that:
Before this accident the plaintiff, though suffering from a cardiac or cardiovascular disease, exhibited no disabling symptoms of the disease, and adequately met the extreme physical demands of his employment. He was working with medical approval and with his employer’s full knowledge of his existing dormant disease. He has established an accident and his inability to return to work. Medical opinion recognizes that an accident (exertion) caused some kind of injury, that the plaintiff is unable to return to work because of disability, and that the accident manifested the disability. We must therefore conclude that the accident has caused the termination of employment because of disability.
In Johnson, supra, the court cited Bertrand for the rule that:
In a case such as the present one, where there is proof of an accident and of a following disability without any intervening cause, it is presumed that the accident caused the disability.
The court in Johnson continued, stating: In the present case, the presumption applies. The evidence reflects that the plaintiff suffered no back pain prior to July 16,1970. It establishes that on July 16, 1970, the plaintiff was involved in a work-related accident. The pain, which the plaintiff experienced had its inception with the accident and continued to the time of the trial.
The court concluded that the causal relationship had been established. Thus we believe that it is not necessary that plaintiff show that his life has been drastically altered to relate the disability to the accident, but that he need only show that an accident occurred and that he is now disabled where he was not prior to the accident.
The trial judge found that plaintiff was working for Hudson Engineering Corporation as a carpenter’s helper and that an accident occurred on October 25, 1976. He found that, regardless of how it happened, plaintiff was struck by a drill. He also found that plaintiff had worked at various jobs beginning in October 1977.
The trial judge noted that plaintiff testified that his activities were not curtailed, but we disagree. Plaintiff clearly testified that his social activities and athletic participation were curtailed.[2]
The trial judge reviewed the medical evidence and, in doing so, stated that the first orthopedic surgeon to see plaintiff could not explain plaintiff’s complaints by a physical abnormality. He also related that the plaintiff recalls the doctor telling him it was in his head. Our review of Dr. Akins’ deposition shows that while he had not found any objective indications of knee problems, he did say that the lateral meniscus is one of the hardest injuries to clinically detect[3] and that sometimes the abnormality would show up later.[4] Additionally, we believe the trial judge misinterpreted plaintiff’s testimony. His testimony was:
Q. Why did you stop seeing Dr. Akins?
A. Because in my opinion he was giving me the run around. More or less *369 . When I went the last time he more or less insinuated there was nothing wrong. It was in my mind.[5]
This is apparently the basis of the trial judge’s observation that plaintiff expressed resentment when told that Dr. Akins’ did not foresee any permanent disability. Dr. Akins’ deposition neither precludes the injury or disability nor contradicts plaintiff’s testimony that his disability resulted from the accident of October 25, 1976.
The trial judge in reviewing the deposition of Dr. Schneider, the treating physician, found that he was of the opinion that plaintiff could return to his occupation. The deposition of Dr. Schneider reveals that while he had released plaintiff to return to work without restriction in September 1977 he had restricted plaintiff’s work activities based on his most recent examination.[6]
The judge faults plaintiff for failing to consult an orthopedist initially. Plaintiff, with a high school education, should not be faulted for seeking medical care from a general practitioner who referred him to an orthopedist. The trial judge also notes that plaintiff’s problems differ little from those he experienced 10 years earlier. We feel this is only natural since both problems relate to cartilage injuries.
The trial judge also remarks that Dr. Schneider’s removal of cartilage (lateral meniscus) contributes little to resolving causation. In our view that is not the case. Dr. Schneider’s removal of the meniscus supports plaintiff’s testimony of pain and swelling between the injury and the operation, a period in which Dr. Akins found no objective sign of derangement within the knee but admitted that it could be present and undetectable in the period in which he examined plaintiff.
The judge, as we discussed earlier, felt there had been no change in plaintiff’s lifestyle. Much import was placed on the circumstances of plaintiff’s leaving his employment at T & S Refinery. Simply put, plaintiff informed his supervisor he was leaving for financial reasons, but testified at trial that he left both because of financial reasons and because of his physical discomfort in performing his work.[7] This is borne out by the change in his rate of pay at T & S Refinery ($4.25 per hour)[8] and Western Company ($4.10 per hour)[9] and the testimony of a fellow employee, David Du-hon.[10]
Further import was placed on a supposed lack of change in plaintiff’s life before and after the accident. Plaintiff’s testimony of pain and disability is borne out by Dr. Schneider’s examinations and subsequent surgery. None of the witnesses offered by defendant contradicts plaintiff’s testimony of reduced social and athletic activities since each of them only saw plaintiff on a few occasions.
Plaintiff has testified to his pain and discomfort in performing several jobs held since the accident. He has also presented co-workers who testified that he experienced either pain, swelling or both on strenuous exertion. Several witnesses also testified that prior to his accident plaintiff had not had either pain, suffering or both in performing strenuous activities. Defendant was only able to present witnesses who saw plaintiff less frequently and from a distance to say that he did not show signs of pain or swelling or limp while he was at work. Defendant also produced witnesses who testified as to plaintiff’s social and physical activities. These witnesses could not positively testify as to plaintiff’s performance or disability,[11] but they had seen him engage in activities which he admittedly performed but less frequently than before his accident.[12]
*370 Therefore, with respect for the trial judge’s decision, we must disagree with him as we feel he is clearly wrong.
Regarding the issue of disability, the trial judge suggests plaintiff is not disabled but pretermits ruling on that issue. Therefore we must address the issue.
Plaintiff’s treating physician, Dr. Schneider, stated in his deposition that he would restrict plaintiff’s job capability insofar as a job required climbing, squatting, and kneeling. Additionally, he assessed a 15% permanent disability of the left knee.[13]
Dr. Meuleman assessed plaintiff’s disability at 20-25% and stated he would have difficulty in squatting for any length of time without experiencing substantial pain.[14] Dr. Morin assessed plaintiff’s disability at 15% due to recent injury and 30% of the joint including the childhood injury and stated that plaintiff would experience pain on prolonged standing, kneeling, squatting, or walking on uneven surfaces.[15]
The testimony at trial was that plaintiff’s occupation, carpenter’s helper, required considerable stooping, squatting, and kneeling.[16] Plaintiff also experienced pain and was incapacitated by climbing and squatting at a later job.[17] We find plaintiff is disabled from returning to his prior employment because to do so would cause him substantial pain and discomfort.
LSA-R.S. 23:1221 provides that where an employee is disabled but able to be gainfully employed, the amount of compensation will be 66% per cent of the difference in his wages at the time of injury and subsequent to the injury.
Plaintiff was paid the maximum statutory compensation until September 3, 1978 and a reduced rate from September 4, 1978 through November 9, 1978. The total compensation paid plaintiff was $9,591.70. We hold that plaintiff is entitled to receive $11,270.35 in compensation through the date of this decision (April 9,1980) and thereafter at the appropriate rate and period according to LSA-R.S. 23:1221(3).
Plaintiff prayed for attorney fees and penalties as provided in LSA-R.S. 23:1201.2. The statutory test is whether the discontinuance is “arbitrary, capricious or without probable cause.” Defendant’s claim adjuster had in its possession the reports of Dr. Schneider and Dr. Morin.[18] These reports both indicated that plaintiff was disabled but conflicted as to whether he was able to return to work. Due to the conflict present in the medical reports, we will not hold the employer “arbitrary, capricious or without probable cause” in its termination of benefits.
DECREE
The judgment appealed from is reversed. Judgment is rendered for plaintiff against defendant for past due workmen’s compensation benefits in the sum of Three Thousand Fifty-Seven and 43/100 Dollars ($3,057.43)[19] and for future benefits accord *371 ing to law for a maximum of 425 weeks.[20] Costs are assessed to defendant-appellee.
REVERSED AND RENDERED.
The judgment as amended is made the final judgment of this court. Further, except as set forth above, the application for rehearing by appellee is denied.

. Record, p. 271.

. Record, page 313, 315.

. Record, page 254, 256, 257;

. Record, page 252, 253, 256.

. Record, page 322.

. Record, page 157, 158.

. Record, page 328.

. Record, page 327.

. Record, page 331.

. Record, page 380.

. Record, page 418, 419, 458.

. Record, page 340, 343.

. Record, page 143.

. Record, page 107, 108.

. Record, page 107, 108.

. Record, page 361, 366.

. Record, page 380.

. Record, page 410, 411.

. We calculate plaintiffs benefits as follows based on the record and according to LSA-R.S. 23:1221(3):
“Average weekly wage at Hudson: $234.00
WEEKLY WAGES EARNED COMPENSATION DUE (WEEKLY1
11/06/76-09/30/77 (47 weeks)-0-$95.00*
10/01/77-12/31/77 (13 weeks)-125.00 72.67
01/17/78-07/31/78 (30 weeks)-90.00 95.00
08/01/78-10/25/78 (13 weeks)-0-95.00
10/26/78-11/15/78 (03 weeks)-196.20 25.20
11/16/78-11/25/78 (02 weeks)-. 176.00 38.67
*371 WEEKLY WAGES EARNED COMPENSATION DUE tWEEKLY!
11/26/78-12/10/78 (02 weeks)- 247.40 $ -0-
12/11/78-12/25/78 (02 weeks)- 238.92 -0-
12/26/78-01/10/79 (02 weeks)- 258.14 -0-
01/11/79-01/25/79 (02 weeks)-195.49 25.67
01/26/79-02/10/79 (02 weeks)-199.86 22.76
02/11/79-02/25/79 (02 weeks)-124.94 72.71
01/26/79-03/02/79 (01 week )-78.42 95.00
03/03/79-03/10/79 (01 week )- # -0-
03/11/79-03/17/79 (01 week )-186.63 31.58
03/18/79-03/24/79 (01 week )- 329.61 -0-
03/25/79-03/31/79 (01 week )- 244.57 -0-
04/01/79-04/07/79 (01 week )- 399.36 -0-
04/08/79-04/14/79 (01 week )-167.31 44.46
04/15/79-04/21/79 (01 week )-311.85 -0-
04/22/79-05/27/79 (01 week )- # -0-
05/28/79-04/09/80 (24 weeks)-166.25 45.17
(Every other week (24 weeks)-140.00 62.67
The compensation due as of April 9, 1980 is Twelve Thousand Six Hundred and Forty-Nine and 13/100 ($12,649.13) Dollars. Hudson Engineering has paid Nine Thousand Five Hundred and Ninety-One and 70/100 ($9,591.70) in benefits so they owe Three Thousand Fifty-Seven and 43/100 ($3,057.43) Dollars.”

 Statutory maximum.

 The record indicates plaintiff earned sufficient weekly wages during this period so as not to be entitled to benefits.

. Plaintiff was injured October 25, 1976.